## Brentlinger v. Louisville Railway Company, et al.

(Decided January 7, 1914).

Appeal from Jefferson Circuit Court.
(Common Pleas, Third Division).

1. **Municipal Corporation—Obstruction of Street—Abutting Property.**—When the city allows a street to be obstructed in the construction of a building on abutting property by a contractor, it is the duty of the city and the contractor to use ordinary care that the street shall be reasonably safe for travel, where the public is by implication invited to go; and both are answerable if a temporary sidewalk laid down for the use of the public while the permanent sidewalk is obstructed, is not reasonably safe by reason of the rear end of street cars swinging over it in making a turn at this point.

2. **Municipal Corporation—Street Construction—Lookout.**—When in a crowded city thoroughfare the operators of a street car have

reason to know that the rear end of the car will endanger persons on a temporary side walk constructed in the street, they should keep a lookout for such persons and exercise ordinary care for their safety.

J. L. RICHARDSON, H. O. WILLIAMS for appellant.

LEON P. LEWIS, PENDLETON BECKLEY for appellee City of Louisville.

FAIRLEIGH, STRAUS & FAIRLEIGH for appellee, Louisville Railway Company.

O'NEAL & O'NEAL for appellee, Selden Breck Construction Company.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

Jefferson street in Louisville runs east and west; there are two street car tracks in the street, cars going west using the north track and cars going east using the south track. Fifth street runs north and south, most of the cars running on Jefferson street run up and down the street, but there are street car tracks in Fifth street and occasionally a car going west on Jefferson street turns south on Fifth street. In January, 1912, the Selden Breck Construction Company was erecting the Inter Southern building at the northeast corner of Fifth and Jefferson streets, and under a permit from the city was obstructing the north side of Jefferson street with its engines and material—nearly out to the north street car track. To permit footmen to get along on this side of the street it had laid a temporary board sidewalk around its obstructions for the public to walk on. This board sidewalk came out nearly to the street car track and all the space between this sidewalk and the property line was occupied by the obstructions referred to. Walter W. Brentlinger who lived in Jefferson county was in the city on business and passing eastward on Jefferson street. As he was walking on the board walk referred to a street car came along. This car turned southward into Fifth street, and in making the turn the rear end of the car swung out over the sidewalk, striking Brentlinger upon the hip and knocking him over upon the material stacked on the opposite side, inflicting upon him, as he alleged, serious and painful injuries to recover for which he brought this suit against the city of Louisville, the Construction company and the street railway company.

He alleged in his petition that the city and the Construction company were negligent in the construction of the sidewalk so close to the railroad track as to make it dangerous to people using it; that the city was also negligent in permitting the Construction company to blockade the street, and in furnishing a dangerous sidewalk for pedestrians to use and that the railroad company was negligent in operating the car and running against him. The circuit court sustained the demurrer of the city and the Construction company to the plaintiff's petition. The case came on for trial against the railway company and at the conclusion of the evidence for the plaintiff the court instructed the jury peremptorily to find for the defendant and the plaintiff's petition having been dismissed, he appeals.

In Baumeister v. Markham, 101 Ky., 122, we held that the degree of care required of contractors who are constructing buildings on the streets of a city must be proportionate to the danger and risk of injury involved in the circumstances of the particular case and that they must exercise ordinary care in protecting the public from liability to injury, either from an excavation made in the street or by any other act which makes the use of the street unsafe or less secure. In Grider v. Jefferson Realty Co., 116 S. W., 691, we said:

"It is the duty of a city to keep its streets and all parts thereof at all times in a reasonably safe condition for public travel. And when the city permits abutting owners to use its streets in the construction or repair of buildings, this does not in any measure lessen its duty to exercise the degree of care that would be required if it had not surrendered a portion of the street for this purpose. The streets of a city cannot be kept reasonably safe for public travel, unless obstructions, unsafe places, and excavations are protected by means or methods reasonably sufficient to give persons exercising ordinary care for their own safety notice or warning of the obstructions, unsafe places or excavations."

The same principles were announced in Blocher v. Dieco, 99 S. W., 606, and the City of Glasgow v. Gillenwater, 113 Ky., 381.

The temporary walk way was built for the public to walk on; the public were by necessary implication invited to use it. It was incumbent upon both the contractor and the city to use ordinary care to keep the street reasonably safe, and when the temporary sidewalk was pro-

vided for the use of the public while the regular sidewalk was obstructed, it was incumbent upon both the contractor and the city to use ordinary care that the temporary walk should be safe. It is true there were no holes in the plank. If there had been holes in the temporary sidewalk and the plaintiff had been injured by falling into one of them, confessedly both the contractor and the city would be liable; for the sidewalk had been there some time and had in fact been constructed under the supervision of the city. But the danger of being struck by passing cars rendered the sidewalk no less unsafe for pedestrians than if there had been holes in it. The cars usually went straight down Jefferson, and a car going down Jefferson would not be in any way dangerous, but occasionally a car would turn south on Fifth Street; and when a car would turn south on Fifth street, the pedestrian could not tell, until it began to turn, as the movement was made by an electric switch under the charge of the motorman; and when the turn was made the rear end of the car would strike any one on the side walk at the point on the turn. Whether the plaintiff exercised ordinary care is a question for the jury. It was his duty to exercise such care for his own safety as may be reasonably expected of a person of ordinary prudence situated as he was. But, if as he showed, he was not aware of any danger on the sidewalk until he was struck by the car, it cannot be said as a matter of law that he was guilty of contributory negligence, especially, if, as he showed, the material of the construction company was piled out up to the temporary sidewalk, so that when he came in danger from the car there was no space for him to get out of the way of it. The sidewalk having been provided for the use of the public, if in view of the projection of the rear end of a street car, it was not reasonably safe, neither the city nor the Construction company can be said to have discharged its duty, and this is a question for the jury.

We do not see any essential difference between an excavation made in a street and any other dangerous situation created therein. If this temporary sidewalk had been over an excavation, and had been left unguarded so that a person in the dark had fallen into the pit, the defendants would clearly be liable, and the same result must follow if when they obstructed the regular sidewalk they constructed for the use of the public a temporary walk way which for any other reason was not reasonably safe.

It is true we held in South Covington, etc., Street Railway Co. v. Besse, 108 S. W., 848; Louisville Railway Co. v. Ray, 124 S. W., 313, and Gribbins v. Kentucky Traction Co., 150 Ky., 277, that a person struck in a street by the rear end of a street car in making a turn could not recover for the reason that he should not have stood so near the street car. Those cases are in line with the authorities in other jurisdictions. But there the plaintiff had the whole street for his use; he saw the car and all he had to do was to keep out of its way. The ground upon which all these cases rest is that there the cause of the plaintiff's injury was his not observing the obvious precaution of stepping back or getting out of the way of the car a thing which under the facts those in charge of the car had a right to assume he would do. (Nellis on Street Railways, section 424; Jelly v. North Jersey Street Railway Co., 76 N. J. L., 191; Widner v. West N. St. Railway, 158 Mass., 49; Garvey v. R. I. Co., 26 R. I., 180.) Here the plaintiff was walking on a sidewalk built for the use of the public and held out to the public for its use. The plaintiff had a right to assume under such circumstances that the sidewalk was safe; for he was using it upon an implied invitation.

The facts of the case also distinguish it from the cases cited as to the Street Car Company. The real danger here consisted in the fact that ordinarily the cars did not turn out Fifth Street, and that persons who did not know that cars sometimes turned out Fifth street would be under no apprehension of danger until the car began to turn and then there would be no adequate way of escape from the danger, as the space left was so narrow. Here the plaintiff testified that when the car began to turn there was no room for him to get out of its way by reason of the obstructions placed in the street by the Construction Company, and that the car was moving rapidly and struck him before he could do anything. This condition of things had existed for some days. Jefferson Street is one of the main thoroughfares of the city. Fifth and Jefferson streets is one of the most important corners of the city, the court house being between Fifth and Sixth streets on Jefferson, the City Hall on the corner of Sixth street and many other large buildings in the vicinity. In view of the character of the thoroughfare, the unusual condition of this corner, and the fact that any car turning out Fifth street would endanger a person on this sidewalk, it was a question for the jury whether those in

charge of the street car in the exercise of ordinary care should have anticipated the presence of persons on the sidewalk when a car was making this turn, and should have maintained a lookout for them or taken other precautions for their safety. For the rule is that where the presence of persons near a railroad track and danger to them may be reasonably anticipated by those in charge of the cars, it is their duty to maintain a lookout for such persons and to exercise such care for their safety as may be usually expected of a person of ordinary prudence under the circumstances.

Judgment reversed as to each of the defendants, and cause remanded for further proceedings consistent herewith.