W. H. KNUDSON, Appellant, v. DES MOINES CITY RAILWAY
COMPANY et al., Appellees.

No. 39987.

DECEMBER 13, 1929.

*Clark, Byers & Brunk,* for appellant.

*Corwin R. Bennett,* for appellees.

Evans, J.—I. The defendants F. C. Chambers and C. L. Herring are the duly appointed receivers of the Des Moines City Railway Company, and as such, are, and were, operating its  property in the city of Des Moines. They are charged in the petition with negligence in such operation. The Des Moines City Railway Company was also impleaded. It filed a demurrer to the petition, on the ground that it could not be held liable for negligence committed by the receivers. This demurrer was sustained, and the petition was dismissed as to such defendant. From such order the plaintiff purported to appeal, but the notice of appeal was served too late. We therefore ignore the appeal, so far as this defendant is concerned, and we confine our consideration of the record to the alleged negligence of the receivers in the operation of the railway.

The accident under consideration happened at 7:25 P. M. on June 13, 1928, on Thirteenth Street, near its junction with Clark Street, in the city of Des Moines. Thirteenth Street runs north and south. Clark Street runs east and west, and intersects Thirteenth Street. One block south of Clark Street is Harrison Street, and two blocks south thereof is Forest Avenue, both streets running parallel with Clark Street. For many blocks south of Clark Street a double railway track is laid in Thirteenth Street for the use of the Des Moines City Railway Company. On the evening in question, a street car was running north on the east track, and was due to turn west on Clark Street at the Clark Street intersection. For a few blocks while the street car was approaching Clark Street, the plaintiff, with his wife, was driving his car along the east curb of Thirteenth Street, and trailing the street car. At Forest Avenue he stopped, when the street car stopped, and trailed it again when it started. There was another stop at Harrison Street, 300 feet distant from Clark Street. After this stop, the plaintiff undertook to drive by the street car, and was about to accomplish his purpose, when

he was blocked in his progress by a condition of which he was previously ignorant. It appears that, for the distance of many blocks, the east rail of the car track lies 9 feet and 7 inches from the curb. The width of plaintiff's automobile was 5 feet and 8 inches. About 100 feet south of Clark Street, the line of the rail gradually approaches nearer to the curb. As it nears the intersection, it approaches a point 6 feet and 8 inches from the curb. 17 inches of such space is absorbed by the overhang of the car, leaving only 5 feet and 3 inches of clear space over which other users of the street can pass. Its point of nearest approach to the curb is 15 feet south of Clark Street. The purpose of this divergence is to enable north-bound cars to make the turn west on Clark Street without undue interference with cars approaching from the opposite direction, and making a like turn from Clark Street south on Thirteenth Street. The plaintiff, in his attempt to drive by the street car, was unaware of this imperceptible approach of the rail to the curb, until he suddenly discovered that he was wedged in by the front end of the car thus approaching the curb, whereupon he brought his car to a stop. But his stop did not save him. As the front end of the car swung away from the east curb and turned west on Clark Street, the outer swing of the rear end of the car caught the automobile in its trap and partially crushed it. When the plaintiff attempted to drive by the street car, he was in full view of the conductor, who sat in his chair facing the east at the middle door of the car. The plaintiff was not previously familiar with the conditions existing; nor was he aware even that the car he was passing was due to turn west on Clark Street. Plaintiff introduced his evidence, which, if taken as true, established the foregoing facts. The question is, Were these facts sufficient to go to the jury, either on the question of the negligence of the receivers, as operators of the railway, or on the question of plaintiff's freedom from contributory negligence?

On this question the appellees rely upon what we said in *Wheeler v. Des Moines City R. Co.*, 205 Iowa 439. In that case, the plaintiff, while the full width of the street was available to him, approached a street car so closely that he was caught by the outswing of the rear end, as the car made its turn. He was in no sense crowded into such perilous position. We held that the outswing of the rear end of a car, while making a turn, was

a fact so obvious that the plaintiff was bound to take notice of it. Manifestly such is not the controlling question in this case. We may grant herein that this plaintiff was bound to know that the rear end of the street car would swing out beyond the rails whenever the car made a turn in the other direction, and that he was required to adapt himself to such obvious fact. If the car rails had been laid parallel with the curb, and at 9 feet 7 inches therefrom, the plaintiff would have passed the car, as he proposed to do, and would have been wholly out of the way of the outswing of the rear end when the turning point was reached. The approach of the rail toward the curb was comparatively imperceptible. It might be readily observable to some people, and not so to others. The plaintiff was driving his automobile in rather close quarters, at best, and his attention was doubtless concentrated upon the maintaining of a straight course. The necessary effect of this approach of rail to curb was to render the street impassable at that point, for the time being. This was accomplished by the mere presence of the car upon the rail without warning from any source to other travelers that the street was impassable at that point at that time. Such condition became a hidden danger. It was manifestly caused by the operation of the cars over the rails in such position. The question is, Did the existence of this hidden danger impose upon the operators of the railway any duty of lookout or warning? The plaintiff was drawn into a dangerous place. If he could escape therefrom either by going forward or backward or by stopping, it was his duty to do so. But no avenue of escape was open to him. Whichever course he might attempt, one was as fatal as the other. A situation somewhat analogous was considered by us in *Mangan v. Des Moines City R. Co.*, 200 Iowa 597. In that case, a pedestrian, knowing that a street car was about to turn, took her position within a marked safety zone, assuming it to be a place of safety, and was unsuspectingly caught by the outswing of the rear end of the car. We held in that case, notwithstanding that the injury to the plaintiff was caused by the outswing of the rear end, and notwithstanding that such outswing was an obvious fact, to be guarded against by the plaintiff herself, yet the marking of a safety zone, so as to include an area of danger from the outswing, created a hidden danger, for which the company was

bound to maintain an outlook and to give warning. That case is not necessarily decisive of the case at bar, but it has much pertinence to the question here involved. Some of the authorities from other jurisdictions cited therein bear still more closely upon the present case. See *Schwartz v. New Orleans & C. R. Co.*, 110 La. 534 (34 So. 667); *Fritch v. Pittsburgh R. Co.*, 239 Pa. St. 6 (86 Atl. 526); *Brentlinger v. Louisville R. Co.*, 156 Ky. 685 (161 S. W. 1107).

Unless it be true that every prudent user of a motor vehicle over Thirteenth Street would ordinarily discover the actual measurement and variation of distance between rail and curb and discover the danger created at this particular point, then the plaintiff was not bound, as a matter of law, to discover the same. We think the law of "hidden danger" is applicable hereto, and that the plaintiff was entitled to go to the jury both on the question of the negligence of the defendant and of his own freedom from contributory negligence.

 II. The appellee filed a motion to strike the appellant's amended abstract because the same was filed after the expiration of the 120-day period. The motion was submitted with the case, and the same is now overruled.

The judgment below is reversed.—*Reversed.*

ALBERT, C. J., and STEVENS, FAVILLE, and KINDIG, JJ., concur.