GRACE WIDMER *vs.* WEST END STREET RAILWAY
COMPANY.

Suffolk.    December 1, 1892. — January 5, 1893.

Present: FIELD, C. J., ALLEN, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Street Railway — Negligence — Action.*

A woman who was familiar with the locality, which was a crowded thoroughfare in a city, started, accompanied by a police officer who was stationed there, to cross a street, at the corner of another street. She stopped, with the officer, in the middle of the crossing near the side of the railway tracks on the street, and waited for a car to go by, which she saw before it reached her. She was looking north at some teams, which were not near enough to injure her, while the car was coming from the south. She saw the front end of the car go by her, and thought she was far enough from it to be safe, but did not notice the rear end of the car. As the car turned the corner of the two streets at ordinary speed, she was struck on the temple by the handle on the rear dasher of the car. There was no switchman at the corner, and the conductor was off the car adjusting the switch. *Held*, in an action against the railway corporation for the injury, that there was no evidence of negligence on the part of the defendant.

TORT, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

The injuries complained of were received by the plaintiff, on June 5, 1891, on Washington Street, at the corner of Summer Street, in Boston. Winter Street is opposite Summer Street

and west of Washington Street. It was admitted that Washington Street was an accepted street of the city of Boston on June 5, 1891, and that the horse car hereinafter mentioned was at that time operated by the defendant.

John W. Little testified that he was a police officer, and stationed at the corner of Washington Street and Summer Street in June, 1891; that at that time the building at the southeast corner thereof was being repaired, and about one half of the sidewalk on Washington Street was there obstructed; that there was a double track in Washington Street which extended straight down Washington Street and also turned down Summer Street; that the curve began on the crossing, which was about fourteen feet wide, and the curve was a sharp one around the corner into Summer Street; that this was the most crowded corner in Boston from about half-past ten o'clock in the morning until about half-past six o'clock in the afternoon; that he saw the plaintiff on June 5, 1891, a little after twelve o'clock at noon; that she started across the street ahead of him, and stood about three or four feet from him to the north; that he stood with his body and face turned towards the north, and she stood directly in front of him, with her head turned north, both being between the tracks, her body turned toward the east; that she was struck on the right temple by the handle on the rear dasher of an Atlantic Avenue horse car going north and into Summer Street; that she was on the crossing, and had not been there more than a minute; that at that time the street was clear, and nothing was on the crosswalk, which was about fifteen feet wide, and she stood in about the centre; that the car was going as cars usually go; that the horses were trotting around the curve; that he did not see her in time to save her, but caught her in his arms after she was struck and took her to the sidewalk; that the conductor was off the car turning the switch; and that there was no switchman there. On cross-examination, he testified that he was stationed at the corner for the purpose of stopping cars if likely to interfere with people on foot crossing the street; that he did not stop this car, and had no occasion to; that the distance between the tracks was about four feet, and the plaintiff was standing between the tracks; that he knew where to stand and be safe, but perhaps another person would

not; that the point of the switch was twelve feet south of the south line of the crossing; that the car came close to the curbstone at the southeast corner of Summer Street and Washington Street, and would have to be pretty well on the curve before the rear end could be at the middle of the crossing; that the rest of the crosswalk to the opposite corner was clear; that there was nothing to occasion the plaintiff to stand so near the car; that there was at that time plenty of room for people to stand where there would be no danger of being struck; that no other teams were passing, and there was nothing on the westerly side of the street to cause her to get where she was; that the car was not going rapidly, jogging around the corner at the regular rate as they always go, and stopped just around the corner on Summer Street, where all those cars make a stop; that he could not tell how long she had stood there before she was hit; that she saw the car coming, and stopped to let it pass; and that there was nothing unusual in the way this car went round the corner.

The plaintiff testified that she was eighteen years old on June 21, 1891; that she was working on Hawley Street in June, 1891; that on the 5th of June she had been on Winter Street, and went down the sidewalk on the south side of Winter Street to Washington Street; that when she got to the corner of Winter Street and Washington Street the street was crowded; that she stepped down from the curbstone, and then stepped back; that the police officer, Little, came towards her, waved his hand, and said, "Come on"; that she stepped down and started across the street with him, he taking hold of her arm; that she first saw the car about opposite the store on the southeast corner of Washington Street and Summer Street; that the car was then stopped or just starting in front of the store; that at the time of the accident she was standing close to the officer, on the same line with him, and about four feet from the east track; that she turned her head toward the north, and was looking at teams coming from that direction, but not near enough to injure her, and thought she was far enough from the car to be safe; that she did not know what happened; and that she was struck, and knew no more until she was standing against the corner. On cross-examination, she testified that she knew the corner; that she had been there a great many times, and knew it was a

crowded corner; that she saw something yellow go by her; that she first saw the car just starting up, and about fifty feet from her; that she saw the front end go by her; that she knew if she stood too close to the car she would get hit, and that the car could not turn out; that she did not know that the car moved more than twice its length; that she thought she was a safe distance from the car; that she was with the police officer; that she thought she was safe partly because the police officer was there, and partly because she supposed she was safe; and that she did not notice the rear end of the car.

Charles Boyer testified that he was a police officer; that he knew the corner of Washington Street and Summer Street in June, 1891; that the grade of Summer Street was lower than that of Washington Street; that there was greater travel there than at any other point in Boston; that Atlantic Avenue cars ran down Summer Street, and all other cars along Washington Street; that Atlantic Avenue cars ran every fifteen minutes, and oftener in summer; that the switch was about fourteen feet south of the south line of the crosswalk, and the east rail of the east track was eight feet from the east curbstone of Washington Street at the line of the switch, about seven feet from the curbstone at the south line of the crossing, and two or three feet from the curbstone at the corner; that at the time of the accident he was standing on the east side of Washington Street, at the curbstone, and about five feet south of the south line of the crossing; that he saw the plaintiff on the opposite side of Washington Street; that officer Little approached her, and motioned her to cross; that she stepped off the sidewalk and came across the street with him, and both halted by the east track; that Little faced north, and she turned her head north, her body facing east, both apparently looking at the same object; that the handle of the hind dasher struck her on the head hard, she staggered, and Little caught her and brought her to the sidewalk; that it was an open car, and the conductor was off the car attending to the switch, and no switchman was there; and that the horses started off at a smart walk, and he didn't think they were trotting.

The judge, at the request of the defendant, ruled that there was no evidence which would warrant a verdict for the plaintiff,

and ordered a verdict for the defendant.  The plaintiff alleged exceptions.

*J. R. Smith,* for the plaintiff.

*M. F. Dickinson,* ( *W. B. Sprout* with him,) for the defendant.

KNOWLTON, J.  At the trial of this case there was no evidence of negligence on the part of the defendant.  It was an undisputed fact that the plaintiff was standing near the side of the track, waiting for the car to go by, and she testified that she saw it before it reached her ; that she was looking north at some teams, while the car was coming from the south ; that she saw the front end of the car go by her, and thought she was far enough from it to be safe, and that she was struck on the right temple by the handle on the rear dasher of the car as it went round the corner.  There was no pretence that there was any defect in the car or in its equipments, or in the track, and the plaintiff testified to nothing unusual or improper in the management of the car.

There was no reason why the driver should not drive past her and around the corner, for he had no reason to suppose that she would come so near the rear of the car as to be struck when it went by.  The only witnesses who testified besides the plaintiff were two police officers, one of whom was stationed there for the better protection of the public, and he testified that he " did not stop this car, and had no occasion to " ; that " the car was not going rapidly, — jogging around the corner at the regular rate as they always go."  The other, in describing the rate of speed of the car at the time of the accident, said " that the horses started off at a smart walk, and he did n't think they were trotting."  There was no evidence of negligence which had any connection with the accident in the facts that there was no switchman stationed there, and that the conductor turned the switch.

The bill of exceptions discloses nothing that the defendant did or neglected to do of which the plaintiff can justly complain.

*Exceptions overruled.*