a nonsuit. The dismissal cannot be sustained on any ground, and the plaintiffs are entitled to a reversal of the judgment and a new trial.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.

(107 App. Div. 230.)

MATULEWICZ v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. July 27, 1905.)

1. STREET RAILROADS—INJURIES TO PEDESTRIAN—ASSUMPTIONS BY MOTORMAN.

A motorman on a street car may rightfully assume that an adult, apparently in full possession of health and vigor, standing in the street near a curve in the track, but not near enough to be struck by the forward end of the car, will draw back far enough to avoid being struck by the overhang of the car as it rounds the curve.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, § 197.]

2. SAME—CONTRIBUTORY NEGLIGENCE.

One who is standing in the street near the curve of a street car track, which is plainly visible to him, is bound to step back a sufficient distance to avoid being struck by the overhang of the rear end of a car which he sees approaching the curve.

Appeal from Trial Term, Kings County.

Action by John Matulewicz against the Metropolitan Street Railway Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, RICH, and MILLER, JJ.

Bayard H. Ames (F. Angelo Gaynor, on the brief), for appellant.

John F. Carew (Thomas F. Magner, on the brief), for respondent.

WILLARD BARTLETT, J. The plaintiff, while waiting for one of defendant's south-bound electric cars to pass, was struck and injured by the coiled fender at the rear end of the car as it turned from Madison avenue into Forty-Second street, in the borough of Manhattan. He was standing far enough from the outer edge of the curve to allow the entire body of the car to pass him without collision, but so near as to come in contact with the rear end of the car as it swung around the corner. The question which the learned trial judge left to the jury was whether the motorman and conductor who had charge of the operation of the car exercised reasonable care to prevent the collision. All of the car except the portion which struck him passed the plaintiff safely. I quote from the charge:

"The motorman, according to the testimony of the plaintiff, saw him standing in the position in which he did. Did he have a right to assume that he would change his position if he saw that he was too close to the car to avoid coming in contact with the rear end of the car? Was it his duty under those circumstances to give him warning? Was it the duty of the conductor to observe the proximity of the plaintiff to the car, and to give him warning, or

give warning to the motorman to slow up in order to prevent a collision? These are the questions of fact which are to be submitted to you, and you will answer by your verdict whether this motorman and conductor exercised reasonable care, under the circumstances, to avoid a collision between the car which they were handling and the plaintiff upon the street, standing waiting for the car to go by."

It is contended that negligence on the part of the railroad company can be predicated upon the facts in this case under the decision in Suse v. Metropolitan Street R. Co., 80 App. Div. 24, 80 N. Y. Supp. 513. I cannot find anything in the record to support the statement of the learned trial court that the motorman saw the plaintiff as the car approached, or at any time. It may be assumed, however, that in the discharge of his duties he was bound to see him. Nevertheless it seems to me that under the circumstances the plaintiff being an adult, apparently in full possession of health and vigor, the motorman might rightfully assume that the plaintiff, if necessary, as the car turned the curve, would draw back far enough to avoid being struck. Hayden v. Fair Haven & W. R. Co., 76 Conn. 355, 364, 56 Atl. 613. It is true that in the Suse Case, above cited, Mr. Justice McLaughlin, speaking for the majority of the court, said that the railroad company, the appellant therein, "was just as much obligated to prevent a collision .with the rear end of the car as it was with the front end; and if it be true that the motorman's duties were such that he was required at all times to look in front of the car, then the appellant should have required the conductor or some one on the rear to observe that, and, if a collision were about to occur, signal to the motorman to stop"; and, although that case was determined by a divided court, yet the two dissenting judges concurred in this view as to the extent of the defendant's obligation. It is to be observed, however, that the plaintiff in the Suse Case was a passenger, and the court was discussing the duty of a street railroad company toward a passenger, and not toward a traveler upon the street. In my own opinion, in view of the well-known fact that the rear of a street car in rounding a curve necessarily swings out some little distance from the track on the outer edge, it is extending the obligation of street railroad companies too far to impose upon the conductors of their cars the duty of warning persons upon the street against the danger of collision with the rear end after the body of a car has passed in safety. Even if we assume, however, that a more stringent rule is asserted in Suse v. Metropolitan Street R. Co., supra, I think that the complaint in the present case ought to have been dismissed by reason of the plaintiff's failure to prove the absence of contributory negligence on his part. In Garvey v. Rhode Island Co. (R. I.) 58 Atl. 456, the plaintiff, according to her complaint, had taken a position on the street where the swing or overhang of the car came in contact with her person; and the Supreme Court of Rhode Island held that:

"Every person who is of sufficient intelligence to be capable of being left alone in the streets must be presumed to take notice of the obvious fact that the body of a street car, in rounding a curve, must necessarily swing out some little distance from the track on the outside of the curve. And for one to place

himself within reach of the swing or overhang of a car while it is in motion is as much a bar to his recovery in an action against the company as though he had negligently placed himself in front of a moving car, and been injured thereby."

In Widmer v. West End Street Railway, 158 Mass. 49, 32 N. E. 899, the plaintiff, while standing near a street car track, waiting for a car to go by, was struck on the right temple by the handle on the rear dasher of the car as it went round a corner; and the Supreme Judicial Court of Massachusetts held that there was no reason why the driver should not drive past the plaintiff and around the corner, for he had no reason to suppose that she would come so near the rear of the car as to be struck when it went by. In Riddle v. Forty-Second St., etc., R. Co., 173 N. Y. 327, 66 N. E. 22, the Court of Appeals held the plaintiff's intestate to have been guilty of contributory negligence because, while working in a trench at a point where there was a curve in the tracks, he neglected to lean back at a safe distance, as he might have done, but raised himself, and brought his face so near to the car as to come in contact with the step. "This was his own act," says Judge Haight, writing for the court, "and we think it was contributory negligence on his part. He appears to have been an intelligent man, and, as we have seen, was the foreman in charge of the work. He knew that the trench was at the point where there was a curve in the tracks around which the cars ran into Tenth avenue, and that in rounding the curve the rear of a car would be thrown a greater distance from the track than the side of the car when running upon a straight line."

I do not see how the plaintiff in the case at bar can be acquitted of contributory negligence unless we disregard the principle applied in these decisions. The learned trial judge, in denying the defendant's motion for a new trial, expressed the opinion that, if the plaintiff had been so familiar with the situation at Madison avenue and Forty-Second street as to fully appreciate the risk he was taking, he ought to have been nonsuited for his contributory negligence; but he thought the case was properly left to the jury, inasmuch as they might imply from the evidence that he was not thus familiar with the locality. I cannot concur in this view. The plaintiff's own testimony shows that he was as fully acquainted with all the circumstances and the situation as he would have been if he had visited the place a hundred times. The accident occurred at 6 o'clock on the evening of November 27, 1901. The plaintiff testified that there were lights just as were usual every night; and although he stated that he had never been at that place at night before, the inference from his testimony is inevitable from the position of the car when he first saw it and the manner of its approach that the existence of the curve must have been plainly visible to him, and that the accident was due chiefly, if not solely, to his own imprudence in failing to observe the simple and obvious precaution of stepping back so as to avoid the rear end of the approaching car as it swung into Forty-Second street. He does not say or suggest in his testimony that he was not aware of the fact that the rear of the car was likely thus to swing out in rounding the curve, and I

agree with the Supreme Court of Rhode Island that an adult wayfarer upon the streets, apparently in the full possession of his faculties, is chargeable with knowledge of the danger which he incurs under such circumstances.

For these reasons I am in favor of a reversal of this judgment.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.