WILL, Administratrix, Appellant, vs. MILWAUKEE ELEC-
TRIC RAILWAY & LIGHT COMPANY, Respondent.

*March 5—April 2, 1919.*

*Street railways: When person ceases to be a passenger: Assault by
motorman: Liability of company.*

1. A passenger on a surface street railway ceases to be such as
soon as he safely steps from the car into the public street and

has had a reasonable opportunity to leave the place at which he alights, provided he is set down at a place which is reasonably safe and proper for that purpose.

2. Plaintiff's intestate, while riding on a street car, had been rebuked by the motorman for smoking in the car and for spitting on the floor. After he had alighted and as the car was starting he applied an insulting epithet to the motorman, who thereupon checked the car and, upon repetition of the epithet, descended to the street and engaged in an altercation with him which continued until both of them were near the sidewalk. The motorman then struck the decedent with his fist, causing him to fall and sustain an injury which resulted in his death. *Held,* that the decedent had ceased to be a passenger before the assault which caused the injury, that such assault was independent and separate from any prior altercation in the car, and that in making it the motorman was not acting within the scope of his employment so as to render the street railway company liable.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

This is an action by *Bertha Will,* as administratrix of the estate of Herman Will, to recover from the *Milwaukee Electric Railway & Light Company* and Fred Beguhl damages for the death of Herman Will, her husband. The death of Will, it is claimed, resulted from injuries inflicted by Fred Beguhl, a motorman for defendant corporation.

On December 24, 1915, Herman Will was a passenger on a street car belonging to the defendant corporation and run by Fred Beguhl as motorman. The route of the car in question was north upon Seventh street to Germania, thence diagonally northwest to Eighth street, and north upon Eighth street. Proceeding north from Walnut street the intersecting streets are Sherman, Harmon, Lloyd, Garfield, North avenue, Lee and Wright streets.

Will and a young man got on the car at Walnut and Seventh streets. Will had a pipe in his mouth. When he walked towards the front of the car he took this pipe out of his mouth. At North street two women and a man boarded the car. At Harmon street the car stopped, but no one got off.

The motorman then said to Will: "There is no smoking allowed here." Will said: "No steam on." The motorman replied: "By the looks of things you have plenty of steam on, but you can't smoke in here." Will then put his pipe in his pocket and Beguhl turned around and started his car. After the car had left North avenue and before it reached Lee street the motorman saw, by the reflection in the front windows of the vestibule, that the deceased spat upon the floor and that he had his pipe in his mouth and was again smoking. The young man who had boarded the car with Will alighted at Lee street. When the car stopped for this purpose Beguhl turned around and noticed that Will had spat three times. He told Will that no spitting was allowed in the car, and that he would have to cease smoking and spitting or that he, Beguhl, would put him off the car or have an officer arrest him. Will showed some surprise that the motorman knew he had spat, but merely remarked, "I know that," to the other's remonstrance. At Wright street Beguhl received a signal to stop the car and Will alighted from the car by the front door. Beguhl was about to start the car when Will, from the pavement, applied an insulting epithet to Beguhl. The car had just started, but Beguhl stopped it, stepped to the door, and said "What's that?" and, when Will repeated the insulting epithet, descended and engaged in an altercation with Will. Both parties moved towards the sidewalk in a threatening attitude. Will made a movement towards his pocket and Beguhl struck him on the point of the chin. Will fell, his head striking the icy pavement, suffering a skull fracture from which his death resulted two weeks later. A pocket-knife dropped from Will's hand when he was picked up and Beguhl claims that Will threatened to attack him with this before any blow was struck.

In her complaint *Bertha Will* alleges that the altercation arose in the car over Will's rights as a passenger, that he was attacked and fatally injured by Beguhl as an agent of the defendant company. She alleges that she was entirely de-

pendent upon Herman Will for support and she asks damages to the extent of $30,000 from the street car company and Beguhl.

In its answer the street car company denies that Beguhl acted as its agent in the assault and alleges that Will had left the car and ceased to be a passenger and that Beguhl had also left the car when the encounter occurred. Beguhl, in his answer, alleges that he acted only in self-defense and without unnecessary violence.

The court entered judgment dismissing the complaint as to the street car company and awarding the company $91.84 costs from plaintiff. Thereupon the plaintiff took a voluntary nonsuit as to defendant Beguhl and appealed from the judgment in favor of the railway company.

For the appellant there were briefs by *William L. Tibbs* and *Henry F. Cochems,* attorneys, and *Geo. A. Gessner,* of counsel, all of Milwaukee, and oral argument by *Mr. Gessner.*

For the respondent there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *James D. Shaw.*

SIEBECKER, J. The question presented under the facts and circumstances given in detail in the foregoing statement is: Did the relationship of passenger and carrier exist at the time the assault commenced? There is no evidence tending to show that the defendant company either authorized or ratified the assault. The controversy in this case is involved with the operation of an ordinary surface street railroad. The rules governing the liability of railroad companies for assaults by employees on passengers do not in their entirety apply to surface street railroads because "it is a general rule in such cases that a person ceases to be a passenger as soon as he safely steps from the car into a public street and has had a reasonable opportunity to leave the place at which he alights, provided he is set down at a place which is reason-

ably safe and proper for that purpose." 10 Corp. Jur.
p. 627, § 1049, par. 3; *Blomsness v. Puget Sound E. R. Co.*
47 Wash. 620, 92 Pac. 414, 17 L. R. A. N. s. 763, cases noted
on pp. 764–769; *Robertson v. W. J. & S. R. Co.* 79 N. J.
Law, 186, 74 Atl. 300; *Wise v. Covington & C. St. R. Co.* 91
Ky. 537, 16 S. W. 351.

The evidence in this case shows that the motorman re-
ceived a signal to stop at Wright street, that he did so, and
when the car had stopped Will proceeded to the front exit
door, which the motorman opened for him. Will stepped
off the car, and immediately turned around and applied an
abusive epithet to the motorman, who was in the act of start-
ing the car. Upon hearing Will he checked the car, stepped
towards the door, saying "What's that?" and when Will
repeated the epithet the motorman in resentment alighted
on the street and continued the altercation until both of them
were near the sidewalk. Then the motorman struck Will
with his fist, causing Will to fall and injuring him, which
resulted in Will's death. In the light of these facts we are
persuaded that the trial court correctly determined the case
by holding that:

"The fact that the deceased, stung by what he may have
considered a rebuke received while on the car, felt like calling
the motorman names, would not revive or extend the rela-
tion of carrier and passenger. The company, by its agent,
must do something. . . . No act, no word, passed between
the motorman and the deceased at the time of the termina-
tion of the relation between passenger and carrier. . . .
When the motorman left the car after the deceased had left
it, he very evidently was not engaged in the company's busi-
ness nor concerned about it."

It is clear that the relationship of passenger and carrier
had been terminated when the assault commenced resulting
in the injury. The controversy prior to the transaction for
the stop at Wright street had concluded, hence the assault
at this place was independent and separate from the prior
altercations concerning Will's transgressions of smoking in

and spitting on the floor of the car.   Under these facts and circumstances there is no ground for a claim of liability of the company on the theory that the servant's acts complained of are within the scope of his employment.

*By the Court.*—The judgment appealed from is affirmed.

KERWIN and ROSENBERRY, JJ., took no part.