## CHARLESTON.

MARY FRENCH v. PRINCETON POWER COMPANY

Submitted March 5, 1924.     Decided March 11, 1924.

.1  STREET RAILROADS—*Care Required to Avoid Injury to Travelers by Overhang of Car Rounding Curve at Crossing.*

The general rule is that a street railway company operating cars over the streets of a city is required to sound a gong or otherwise give notice to persons traveling thereon at street crossings: it is also the duty of persons at such places of danger to use their own senses, and if a motorman in rounding a curve has kept a proper lookout and has safely passed one using the street at such point he may assume that such traveler will keep out of the way of the overhang of the car in rounding the curve, and he is not bound to stop the car or give further warning of the danger. (p. 710).

2.  SAME—*Injuries to Traveler Failing to Avoid Overhang of Car Rounding Curve After Notice Not Actionable.*

And a street railway company is not liable for personal injuries sustained by a traveler on the street at a curve due to his negligence in failing to keep out of reach of the overhanging car in rounding such curve after he has notice of the movement thereon. (p. 711).

Error to Circuit Court, Mercer County.

Action by Mary French against the Princeton Power Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*A. J. Lubliner, John Kee,* and *Russell S. Ritz* for plaintiff in error.

*H. E. De Jarnette,* for defendant in error.

MILLER, JUDGE:

In an action for personal injuries the judgment below, now under review, set aside the verdict of the jury in favor of plaintiff for $5700.00 and awarded defendant a new trial.

This alleged error and the refusal of the trial court to pronounce judgment on the verdict in her favor are the only points urged by plaintiff for reversal.

It is alleged and proven that plaintiff sustained the injuries of which she complains by being struck by one of defendant's cars, on Princeton Avenue, in the city of Bluefield, and near where defendant's traction line crosses the overhead bridge across the Norfolk & Western Railway Company's track, and at a point on said avenue west of that bridge, somewhere between two hundred and fifty and three hundred feet from the bridge, the exact point not being definitely alleged or shown in the evidence, and while walking westward toward Bluefield in the same direction the car was moving, and near the end of the sharp curve.

The negligence alleged and sought to be established by the evidence is that defedant's employees in charge of the car carelessly and negligently failed to keep a lookout for plaintiff in rounding this curve, and in approaching her from the rear as she was waking along the street where she had the right to be, failed to warn her of her danger, and thereby caused the rear end of the car overhanging its normal width on the street to strike her and knock her down, doing her the injuries of which she complains.

The motorman in charge of the car, as he was rounding the curve, saw the plaintiff in company with a young man, her nephew, walking along on the north side of the street, toward town, and safely passed them with the front end of the car, when they were from twenty to twenty-five feet, approximately, from the track. The extreme overhang of the car, back of but near the place where plaintiff was struck, did not exceed a foot and nine inches, and at the place where

the evidence tends to show plaintiff was struck, the space between the overhang of the car and the northern line of the street is from five and a half to three feet; but there was no fence along the street at that point, and beyond the street there was an open space sufficient to furnish ample protection to pedestrains from any injury from moving cars, if needed. The motorman says, and he is corroborated in this by plaintiff's nephew that he was moving over the curve very slowly, not faster than one could walk. Plaintiff's nephew says that he both heard and saw the car as it came across the bridge, and that he guessed his aunt did also, although she says she did not; but she says her senses of sight and hearing were excellent. The nephew says, as all agree, that the front end of the car passed him and his aunt safely; that he did not stop, but continued to walk along behind her; that he was aiming to "hallo" to her, but did not, as he "thought it would pass and wouldn't hit her." Plaintiff and her nephew resided near this curve, and both were familiar with the conditions existing there, with the fact that the track of defendant crossed the overhead bridge, made the turn across the street and back again as stated; and with knowledge of the presence of the approaching car, and that the front end had safely passed both pedestrains, plaintiff apparently took no precaution to avoid being struck by the rear end of the car, but walked on deliberately into the place of danger.

Counsel for plaintiff on this hearing apparently rely on the fact that no gong was sounded by the motorman, or other warning given by him, and that the car was not stopped after passing plaintiff with the front end thereof until he was sure the rear end would pass her safely, knowing, as he must, that in making the curve, the end of the car would overhang the street as shown, and was likely to do her injury if she came within its reach. Is that the law of this case? We think not. The trial court, on request of defendant, told the jury by the first instruction, substantially, that it was the duty of the plaintiff in going upon the road to keep a reasonable lookout and take reasonable precautions against danger from cars on the track, and if she saw or

could have seen the front end of defendant's car as it passed her, it was her duty to keep out of the way of the rear end, and failing in which she could not recover. By the second of defendant's instructions the jury were also properly told that unless they should find that the failure of the motorman to ring the bell or give warning in approaching the place of the accident was the sole cause of the accident, then they should find for the defendant.

Besides these instructions, the court, of its own motion, over the objection of defendant, by two of three several instructions, told the jury in substance that it is the duty of a railroad company, in operating its cars over streets of a city, to maintain a careful and constant lookout for persons *on the track* or approaching the track at crossings, and to give warning of the approach of cars by sounding a gong or bell or other device to attract their attention and enable them to take measures for their safety, and that if plaintiff was without fault and defendant in this case failed to perform this duty, and this was the direct and proximate cause of plaintiff's injury, they should find for plaintiff and assess to her such damages as they might from the evidence believe her justly entitled to recover.

By the third instruction the jury were instructed on the rule as to preponderance of the evidence, as to the weight they should accord to the testimony of interested witnesses, evidenced by their demeanor on the stand, and their bias and prejudice.

By a fourth instruction given over the objection of counsel for both parties, the court, we think properly, gave to the jury the law applicable to the facts in the case, in substance, that it is common knowledge that in rounding a curve the rear of the car will swing out and overlap the street farther than the normal width of the car on a straight track, and that a motorman is justified in presuming that an adult person walking along the street near the track, who is apparently possessed of his senses of sight and hearing, and thereby having notice of the approach of the car and of the existence of a curve in the track, will withdraw far enough from the track to avoid being struck by the rear end of the car as it swings around the curve in the usual

and expected manner, and that though the jury might find from the evidence that the motorman failed to sound the gong at the crossing, yet if they should find that the plaintiff had notice of the approach of the car and of the existence of the curve in the track, and took no notice thereof and failed to look out for her own safety, she was guilty of contributory negligence and could not recover, and the verdict should be for defendant.

While these instructions all propounded correct principles of law, we think on the pleadings and evidence in this case, that the court might properly, as requested by an instruction offered by defendant, have told the jury to return a verdict for defendant.

Upon sound reason, as well as upon authority, the general rule established by the decisions is that a street railway company is bound to use only a reasonable degree of care to keep pedestrains from being struck and injured by its cars at curves, and that in rounding curves, when the cars swing beyond the track and overlap the street to a greater extent than the front, the motorman may rightfully assume that an adult person standing or walking near the track, and who has seen or by the use of his senses should see the approach of the car, and of the existence of the curve, will draw back far enough to avoid being struck by the rear end as it swings around the curve in the usual or expected manner, and that no legal duty is imposed on the motorman to warn against the possible danger of collision with the rear end of the car because of the swinging if he remains in the same position. 25 R. C. L., p. 1245, §108, and cases cited. Of the leading cases so cited on this subject are, *Bryant* v. *Boston Elect. Ry. Co.*, 212 Mass. 62, 40 L. R. A. (N. S.) 133; *Kuhn* v. *Milwaukee Elect. Ry. Co.*, 158 Wis. 525, Ann. Cas. 1916E. 678; *South Covington & Cin. St. Ry. Co.* v. *Besse*, 33 Ky. Law Rep. 52, 108 S. W. 848, 16 L. R. A. (N. S.) 890; *Miller* v. *Pub. Service Ry Co.*, 86 N. J. L. 631, L. R. A. 1915C. 604, and notes.

That such is the rule of law applicable to such cases as this can not be doubted, and it is always applicable unless there are present some extraordinary circumstances giving

notice of dangers of which the railway company should take notice and would be culpably negligent in failing to do so. Of the cases well illustrating the application of this exception to the general rule is *Bryant* v. *Boston El. Ry. Co.,* *supra,* where defendant was held liable for injury to a person on the sidewalk who was hit by a wagon standing in a narrow place between the railroad track and the curb when it was struck by a car rounding the curve at that point. In that case the condition of the narrow space and the fact that the car could not pass without hitting the horse and wagon called for the exercise of special care by the motorman, and of which the plaintiff on the sidewalk was not aware. And so also may we cite our own case of *Mullens* v. *Virginian Railway Company,* 94 W. Va. 601, 119 S. E. 852, the case of a steam railroad, where defendant was held guilty of negligence in running against and side-wiping the wagon of plaintiff at a narrow place in the road due to rock piled there, of which defendant had notice, and where it was held that the question of plaintiff's contributory negligence under the circumstances was one for the jury.

Moreover, in this state the rule is well settled, that it is negligence *per se* for a pedestrain in approaching a railroad crossing not to make use of his senses and faculties, and that in approaching such crossing toward which a car is coming, the traveler must stop and avoid collision if he can most easily and readily adjust himself to the exigencies of the case.

We have examined all the cases cited by plaintiff's counsel in support of the assignments of error, and find them all similar in character to the case of *Bryant* v. *Boston El. Ry. Co., supra,* and where defendants because of the peculiar facts and circumstances were held to a greater degree of care than is ordinarily required in the operation of cars at crossings or other places.

Our conclusion is to affirm the judgment.

*Affirmed.*