[No. 19451.    Department Two.    November 23, 1925.]

CHARLES E. WHITE et al., Appellants, v. THE CITY OF SEATTLE, Respondent.[1]

STREET RAILWAYS (11, 29, 30)—OPERATIONS—CROSSINGS OR RIGHT OF WAY OVER TRACKS—QUESTION FOR JURY AS TO NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE. The negligence of a motorman and the contributory negligence of a pedestrian struck by the rear overhang of the street car, as it swung out around a curve at a busy city street crossing, are questions for the jury, where there was evidence that, in addition to an unusual overhang of the car, the motorman suddenly started his car on signal of the traffic officer, without waiting for the cross traffic to clear, and while the plaintiff, a woman, obeying a traffic signal, was about to cross the street in front of his car, and so close that she had to suddenly step back and failed to get clear of the rear overhang.

Appeal from a judgment of the superior court for King county, Truax, J., entered March 21, 1925, granting a nonsuit, in an action for personal injuries sustained by a pedestrian, struck by a street car at a crossing. Reversed.

James Kiefer, for appellants.

Thomas J. L. Kennedy and Geo. A. Meagher, for respondent.

PARKER, J.—The plaintiffs, White and wife, commenced this action in the superior court for King county, seeking recovery of damages from the defendant city, for personal injuries suffered by Mrs. White, as they claim, from the negligent operation of one of its street cars. The case proceeded to trial before the court sitting with a jury. At the conclusion of the introduction of evidence in behalf of the plaintiff, counsel for the city moved the court for judgment of nonsuit, upon the ground that the evidence did not

[1]Reported in 240 Pac. 903.

support any recovery against the city. This motion was granted, and judgment of dismissal rendered accordingly against the plaintiffs, from which they have appealed to this court.

There was evidence introduced in behalf of the plaintiffs tending to show the manner and fault of Mrs. White's injuries, which would have warranted the jury in viewing the facts substantially as follows: For present purposes, we may regard Second avenue in Seattle as running north and south, and Pine street as running east and west. They intersect at right angles in the main downtown business section of the city. There is a somewhat congested movement of street cars, vehicles and pedestrians over this intersection, especially at the time of day when Mrs. White was injured there. The city maintains a traffic officer at the intersection to control this traffic. This is done by signals which are changed from time to time, directing the traffic over the intersection along Pine street, at the same time stopping it on Second avenue, and directing it over the intersection along Second avenue, at the same time stopping it on Pine street. This alternate direction of traffic includes the same control over pedestrians. The roadway of Pine street between sidewalk curbs is forty-eight feet wide. There are two street car tracks thereon, leaving a space between the northerly track and the northerly sidewalk curb approximately sixteen feet wide. While the street car tracks extend west along Pine street across Second avenue, they are also connected with two similar tracks on Second avenue by curved tracks from the Pine street tracks southerly onto the Second avenue tracks, and the street cars coming west along Pine street move, for the most part, though not all, over these curved tracks onto the Second avenue tracks.

18—136 WASH.

Mrs. White and her sixteen-year old son walked south along the east sidewalk of Second avenue with a view of crossing Pine street on that side of Second avenue. When they reached the north curb of Pine street, they noticed that the traffic signal indicated permissive movement of the traffic along Second avenue over the intersection and the stopping of the traffic along Pine street over the intersection. They also noticed the traffic was so moving. Relying on this situation, they proceeded to cross the roadway of Pine street. They then noticed some automobiles facing Second avenue between the street car track and the northerly curb of Pine street, waiting to move across the intersection when the signal would be changed permitting them so to move. They also noticed a street car facing Second avenue on the northerly track apparently waiting to move across the intersection or by the curve onto Second avenue upon change of the traffic signal. The front end of the street car, the westerly end, was approximately at the east property line, projected, of Second avenue, so that pedestrains crossing on the line of the east sidewalk of Second avenue passed over close to the front end of the street car.

When Mrs. White was about to step onto the northerly street car track in front of the street car, resting in the belief that she had the right of way and the car would not start until the crossing was clear of pedestrians in front of the car, it was suddenly started without warning of any kind, the traffic signal evidently having changed after Mrs. White had entered upon the intersection. Conceiving herself to be in a position of peril and unable to cross in front of the street car without being struck, she stepped back to the north. The front end of the street car missed her, but she was struck by the rear of the street car as it swung

around the curve to the south onto Second avenue. In so turning, the rear end of the street car swung out to the north some three or four feet beyond its normal side overhang. The emergency of the situation rendered her conscious of the probable starting of the automobiles behind her across the intersection along Pine street, thus placing her, as she imagined, in a position of peril not only from the street car but also from the automobiles. In this seeming emergency, she did not correctly measure and fix her place of safety, though looking back it can be seen now that there was a place of safety to which she might have retreated. Indeed, her son was in such place of safety, being somewhat in her rear. The starting of the street car and the automobiles was probably after the change of the traffic signal so as to indicate permission for traffic to move along Pine street across the intersection; but in so starting, the operator of the street car did not wait until traffic in the intersection had cleared; that is, until Mrs. White had moved clear across in front of the street car.

Counsel for the city, and evidently also the trial judge, rest their contentions and conclusions upon the theory that the operator of the street car was not guilty of negligence, and that Mrs. White was guilty of contributory negligence, in the light of our decision in *Gannaway v. Puget Sound Tr., L. & P. Co.,* 77 Wash. 655, 138 Pac. 267. That, it is true, was a case of a pedestrian being struck by the sweep of the rear overhang of a street car rounding a curve. In the opinion of this court rendered in that case, it is said:

"It is not a duty of street car companies to warn pedestrians on the streets that there is an overhang to an ordinary street car when it rounds a curve. This is a matter of common knowledge, and ordinary prudence requires that every one take notice of the fact."

A number of decisions from other states, and our own later decision in *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302, are cited as supporting this general rule. But a critical examination of these cases, we think, will show that this rule has been applied and rendered controlling only in cases where the injured pedestrian has freely and voluntarily placed himself in the position of such peril. This, as the jury might well have believed from the evidence, was not such a case. The jury could well have concluded from this evidence that it was the sudden negligent starting of the street car before the traffic was clear—that is, before Mrs. White had passed clear across in front of the street car—that placed Mrs. White in this sudden position of peril and caused her to misjudge her place of safety to which she might have retreated. Had there been no traffic signal system which she was obeying, and which clearly gave her the right of way until she was clear of the path of the street car, and no automobiles in her rear which she might well believe would probably instantly move after her passing their path, we might have a situation where the general rule invoked would be applicable as against her. Our decision in *Riddel v. Lyon,* 124 Wash. 146, 213 Pac. 487, clearly supports the view that Mrs. White had the right of way clear across the intersection, she having entered upon the roadway before the change of the traffic signal, even though it again changed while she was on the intersection. Observations made by Judge Miller, speaking for the supreme court of West Virginia in its comparatively recent decision in *French v. Princeton Power Co.,* 95 W. Va. 707, 122 S. E. 171, are enlightening in our present inquiry. He there observed:

"That such is the rule of law applicable to such cases as this can not be doubted, and it is always applicable unless there are present some extraordinary

circumstances giving notice of dangers of which the railway company should take notice and would be culpably negligent in failing to do so. Of the cases well illustrating the application of this exception to the general rule is *Bryant v Boston El. Ry. Co.*, 212 Mass. 62, 98 N. E. 587, 40 L. R. A. (N. S.) 133, where defendant was held liable for injury to a person on the sidewalk who was hit by a wagon standing in a narrow place between the railroad track and the curb when it was struck by a car rounding the curve at that point. In that case the condition of the narrow space and the fact that the car could not pass without hitting the horse and wagon called for the exercise of special care by the motorman, and of which the plaintiff on the sidewalk was not aware. And so also may we cite our own case of *Mullens v. Virginian Railway Co.* (W. Va.) 119 S. E. 852, the case of a steam railroad, where defendant was held guilty of negligence in running against and side-wiping the wagon of plaintiff at a narrow place in the road due to rock piled there, of which defendant had notice, and where it was held that the question of plaintiff's contributory negligence under the circumstances was one for the jury.''

We are of the opinion that the evidence introduced in behalf of appellants in this case entitled them to have the questions of the city's negligence and of Mrs. White's contributory negligence, submitted to the jury as questions of fact, and that the trial court erred in disposing of these as questions of law.

The judgment is reversed and appellants are awarded a new trial.

TOLMAN, C. J., MACKINTOSH, MAIN, and MITCHELL, JJ., concur.