ZALEWSKI, Respondent, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*November 5—December 3, 1935.*

For the appellant there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*

For the respondent there was a brief by *Rubin & Zabel,* and oral argument by *Nathan Ruppa,* all of Milwaukee.

FRITZ, J.   Plaintiff was injured by being struck on the back by the rear end of a streetcar as it swung outward while rounding a curve in the track at a street intersection.   The

car was at the rear of an eastbound, two-car train, eighty-nine feet long, on which she had been a passenger. She and a number of other passengers had alighted therefrom when it had been brought to a stop with its front end on the north and south crosswalk at the intersection. There the tracks on which that car was to proceed, curved to the north; and as a car made that curve, the rear end thereof would gradually swing further outward to the south and east until it reached its greatest overhang, which was five and one-tenth feet, as it crossed the west line of the crosswalk. Commencing about seventy-five feet west of that crosswalk, there were also the rails of another track which curved off to the south from the east and west track. All of those matters, and the traffic conditions at that intersection, had become well known to the plaintiff as she went to and from her place of employment in the course of eight years.

On the day of the accident, the plaintiff was the last passenger to alight from the car at its center exit, which was fifty feet west of the crosswalk. She stepped off to the south into a marked safety zone on the public street. That zone was bounded by two yellow lines which, as painted on the pavement by the Milwaukee police department, extended east and west, parallel to the car track, until they converged at the west end of the zone. At their eastern extremity, the north line, which was two and three-tenths feet south of the south rail, ended thirty-five feet west of the west crosswalk; and the south line, which was six and five-tenths feet south of that rail, ended twenty-three and five-tenths feet west of that crosswalk. The difference in those distances was due to the fact that each of the lines terminated shortly before reaching the south rail of the track which curved off to the south. Two movable iron posts were placed by the police department daily to indicate the east and west limits of that safety zone. The east post was placed about twenty-five feet west of the cross-

walk, and the other post was placed fifty feet west of the east post. So that safety zone, as thus marked, was a rectangular space four and two-tenths feet in width, which, commencing twenty-five feet west of the crosswalk, extended fifty feet westward, parallel to and south of the south rail at a distance of twenty-seven and five-tenths inches (or seven and five-tenths inches beyond the overhang of the car as it stood on that rail). Between the safety zone and the south curb of the street, to which plaintiff intended to go, there was a space of twelve and six-tenths feet, in which there were eastbound automobiles which prevented plaintiff from crossing at the time of the accident. According to plaintiff's testimony, upon safely alighting in that safety zone, she walked eastward, along the south side of the car for fifty feet to the west crosswalk on which she turned south in order to go to the curb. Upon being prevented from doing that by the eastbound automobile traffic, she stood there, south of the front end of the car, and facing south, for a minute or two before the car began to move, and did not observe the train at all until she was struck by the rear end after it had moved forward and around the curve almost its entire length of eighty-nine feet. She claims that there was no warning given to her; but, in contradiction of her negative testimony to that effect, there is the positive testimony of the motorman and the conductor, who were in their respective stations at the front end and the center exit of the train, that they rang the bells which were usually sounded to signal that the car was about to proceed.

The court found that plaintiff's injury was proximately caused by the negligence of the motorman and conductor in, (1) failing to allow her to reach a place of safety; (2) in failing to keep a proper lookout to the south of the train; and (3) in starting it forward upon a curve which they knew, or ought to have known, was dangerous to persons in

the situation in which the plaintiff had been placed; and that the plaintiff was free from any contributory negligence. In considering whether there was any negligence on the part of either the defendant's employees, or the plaintiff, which was a proximate cause of plaintiff's injury, it must be noted at the outset, that, under the circumstances and conditions in this case, the plaintiff ceased to be a streetcar passenger as soon as she had safely stepped onto the public street, and had a reasonable opportunity to step into a place of safety. As was said in *Will v. Milwaukee E. R. & L. Co.* 169 Wis. 38, 171 N. W. 658: "It is a general rule . . . that a person ceases to be a [streetcar] passenger as soon as he safely steps from the car into a public street and has had a reasonable opportunity to leave the place at which he alights, provided he is set down at a place which is reasonably safe and proper for that purpose."

In the case at bar, the place at which the plaintiff alighted was not only safe and proper for that purpose, but it was part of an adequate safety zone, in which she could have safely remained where she alighted, or moved about, until the car had proceeded, or she could safely go to the south curb. As plaintiff voluntarily left that place of safety, she thereby terminated her status as a passenger. Thereupon, her situation and rights and duties were the same as those of any other adult pedestrian upon the public street. In respect to such a pedestrian standing or walking near the track, who knew of the proximity of a car and that it was about to proceed, and who, by the use of his senses, could readily observe, and ought to have observed, the movement of a car upon a curved track, the defendant's employees could rightly assume that he would withdraw far enough to avoid being struck by the rear end of the car as it swung around the curve in the usual manner. Under such circumstances, no duty is imposed on employees in charge of a streetcar to keep a lookout or to

give warning at corners and curves so as to prevent others who are using the street, from coming into collision with the rear end of the car because of an outward swing. As was said in *Miller v. Public Service Corp. of New Jersey*, 86 N. J. Law, 631, 632, 92 Atl. 343:

". . . The rule approved by the weight of authority is, that in view of the well-known fact that in rounding a curve, the rear end of a streetcar will swing beyond the track, and overlap the street to a greater extent than the front, the motorman may rightfully assume that an adult person standing near the track, who is apparently able to see, hear and move, and having notice of the approach of a streetcar, and of the existence of the curve, will draw back far enough to avoid being struck by the rear of the car as it swings around the curve in the usual and expected manner, and, therefore, no legal duty is imposed upon the motorman to warn such a person against the possible danger of a collision with the rear, because of the swing, if he remains in the same position. . . ."

To the same effect, see *Dwyer v. Los Angeles Ry. Corp.* 115 Cal. App. 709, 2 Pac. (2d) 468, 470; *French v. Princeton Power Co.* 95 W. Va. 707, 122 S. E. 171, 172; *Gannaway v. Puget Sound Traction, Light & Power Co.* 77 Wash. 655, 657, 138 Pac. 267; *Wheeler v. Des Moines City R. Co.* 205 Iowa, 439, 215 N. W. 950; *Matulewicz v. Metropolitan St. Ry. Co.* 107 App. Div. 230, 95 N. Y. Supp. 7; *Widmer v. West End St. Ry. Co.* 158 Mass. 49, 32 N. E. 899; *Noonan v. Boston Elevated Ry. Co.* 263 Mass. 305, 160 N. E. 811; *South Covington & C. St. Ry. Co. v. Besse,* 33 Ky. Law Rep. 52, 108 S. W. 848, 16 L. R. A. (N. S.) 890; *Louisville Ry. Co. v. Ray* (Ky.), 124 S. W. 313; *Duffy v. Philadelphia Rapid Transit Co.* 291 Pa. 564, 140 Atl. 496, 497. That rule was applied in relation to a pedestrian, in *Kuhn v. Milwaukee E. R. & L. Co.* 158 Wis. 525, 149 N. W. 220; and in relation to an automobile driver in *Ryan v. Milwaukee*

*Northern R. Co.* 186 Wis. 537, 203 N. W. 340. In the *Kuhn Case* the plaintiff was struck by a car's outward swing of nearly six feet as it rounded a curve. The motorman had seen her standing on the street, four or five feet from the track, and signaling for him to stop, when he approached to within ten or twelve feet of her. This court, in holding that the motorman was not negligent as a matter of law, said: "He cannot move his car from the tracks, and he must certainly be entitled to assume that people on the street in apparent possession of their faculties, who see his car approaching and are then out of harm's way, will not allow themselves to come within reach of the car." In *Ryan v. Milwaukee Northern R. Co., supra,* at page 541, the court said,

"He [the motorman] cannot turn to the right or left like the drivers of other vehicles or pedestrians to avoid collisions. He has the double duty of using care to avoid injury to others and of making reasonable speed to accommodate the public. It is true, collisions may happen at the rear of a passing streetcar, but from the nature of the thing such collisions seldom occur, and if they do they are quite apt to be the result of the negligence of some third person. It would seem a harsh rule to require a motorman to anticipate any such collision in the absence of any known danger. In this case the truck seemed out of the zone of danger when the motorman and the first car passed it. There seemed no reason to expect that the truck driver would assume such a position that a collision would occur. . . . Since it was necessary for the motorman to keep close watch forward, we do not consider that he was also required to look constantly to the rear to avoid such a collision as occurred. The law does not impose any such responsibility. . . ."

So in the case at bar, even if defendant's employees had seen, as the car was passing the plaintiff, that she was standing on the crosswalk, they would have been entitled to assume that she, *in the exercise of ordinary care,* would be aware, as she stood within only five and one-tenth feet of the two-car

train from which she had just alighted, that it was moving around the left-hand curve, and that she would not allow herself to be within the reach of its overhang. Even when that overhang was at its greatest point, which was only momentarily as the extreme end of the car was crossing the west line of the crosswalk, there was still left a space of at least one and four-tenths feet between that end and the south line of the safety zone (if extended), and as that space widened progressively immediately east and west of the west line of the crosswalk, it is evident that, by taking but a step to the south or east or west, plaintiff could have instantly and safely placed herself beyond the overhang.

For the reasons stated above, there was no negligence on the part of defendant's employees, which can be held to be a proximate cause of plaintiff's injury, (1) in respect to allowing her to reach a place of safety; or (2) in respect to starting the train forward upon the curve; or (3) in respect to keeping a proper lookout to the south of the train. Consequently, there was no actionable negligence on the part of the defendant, and it was entitled to have the action dismissed. But, even if there had been some actionable negligence on defendant's part, the evidence would well have warranted finding contributory negligence on the part of the plaintiff, because of which her recovery would be subject to diminution, under the comparative-negligence statute (sec. 331.045, Stats.). In the midst of the heavy traffic conditions at that intersection, it was plaintiff's duty to look and listen, and to observe and hear, all that could have been observed and heard by an adult pedestrian exercising ordinary care in that situation; and her failure to observe and hear the moving car, which she knew was close to her and about to proceed around the curve, and to keep out of its pathway by moving slightly ahead or aside, could well be deemed to constitute negligence which proximately contributed to her injury. *Peters v. Milwaukee E. R. & L. Co.* 217 Wis. 481, 259 N. W. 724;

*Hirschberg v. Milwaukee E. R. & L. Co.* 179 Wis. 175, 190 N. W. 829; *Bubb v. Milwaukee E. R. & L. Co.* 165 Wis. 338, 162 N. W. 180; *Schmidt v. Milwaukee E. R. & L. Co.* 158 Wis. 505, 149 N. W. 221; *Schliesleder v. Milwaukee E. R. & L. Co.* 147 Wis. 668, 134 N. W. 144.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.