# Randle *v.* Birmingham Railway Light & Power Co.

*Damages for Injury to Person on Track.*

(Decided Dec. 17, 1908.   48 South. 114.)

1. *Street Railways; Operation; Duty of Motorman.*—A motorman may assume that a pedestrian on the track will turn out of the way of a car, but he cannot rest on such assumption for so long a time as to reach a point where it will be improbable for him to control the car or to give warning in time to prevent injury.

2. *Same; Injury to Pedestrians; Contributory Negligence.*—After discovering that a pedestrian was unaware of his danger, if the motorman failed to use reasonable care to avoid injuring him, the act of the pedestrian in placing himself in a position of danger was the remote rather than the proximate cause of the ensuing injury.

3. *Same; Negligence; Jury Question.*—Where the facts are undisputed and the inferences to be drawn therefrom clear and certain, it is a question of law, as to whether or not a motorman realized that a pedestrian on the track was unaware of his danger, and as to whether the motorman exercised the proper care to avoid injuring him; but if the facts are disputed, or if fair minded persons may arrive at different conclusions from the facts stated, these questions become one for the jury.

4. *Same.*—Under the evidence in this case it was a question for the determination of the jury whether the motorman was guilty of negligence in failing to exercise reasonable care to avoid injuring a pedestrian on the track, after discovery that he was unaware of his peril, and also as to whether the sounding of the gong was sufficient to attract the attention of the pedestrian.

5. *Evidence; Expert and Opinion.*—A witness who qualifies as an expert as to the operation of cars may give his opinion as to the distance in which a car should be stopped running at the speed of the car in question; and where no objection was raised on the ground that the question asked related to the distance in which the particular motorman could stop that particular car, the testimony of such a witness taken on the former trial, it being shown that the witness

was dead, was admissible as against the objection that the question should have been as to the distance in which a properly equipped car could be stopped by a motorman of experience.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by William J. Randle, administrator of John M. Randle, deceased, against the Birmingham Railway, Light & Power Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.— See *Bir. R. L. & P. Co. v. Randle*, 149 Ala. 539; 43 South. 355.

JOHN L. BURNETT, M. M. ULLMAN, DENSON & DENSON, and FRANK S. WHITE & SONS, for appellant. The general affirmative charge should not be given when there is conflict in the evidence.—*Tabler v. Sheffield Co.*, 87 Ala. 305; *Southern Ry. Co. v. Hill*, 39 South 987; *Bir. R. L. & P. Co. v. Jones*, 45 South. 180; *Southern Ry. Co. v. Bush*, 122 Ala. 470. While an engineer may assume that a trespasser will leave the track, this assumption does not apply when the evidence shows that the trespasser does not know of the approach of the car and the motorman knows or should have known from the surrounding circumstances that the trespasser was ignorant of the approach of the car, and failed to give signals of his approach.—2nd. Thompson on Negligence Section 1738; *Houston v. Harvin*, 54 S. W. 626; *St Louis v. Bishop*, 37 S. W. 764; *Sinclair v. Chicago*, 34 S. W. 76. That under the facts in this case, the testimony presented a case for the jury, see the following authority. —*Southern Railway v. Bush, supra; B'ham Railway & Elec. Co. v. Smith*, 25 Sou. 768; *Southern Railway v. Shelton*, 34 Sou. 194; *Central of Georgia R. R. Co. v. Partridge*, 34 Sou. 927; *L. & N. v. Trammel*, 9 Sou. 870; *Hamilton v. A. G. S. R. R. Co.*, 33 Sou. 157; *B'ham Rail-*

[Randle v. Birmingham Railway Light & Power Co.]

*way Light & Power Co., v. Jones,* 45 Sou. 177; *Tuscaloosa Belt R. R. v. Fuller,* 45 Sou. 156; *McDermott v. Severe,* 202 U. S. 600-612; 2nd. Thompson on Negligence Section 1732-1736; *Erickson v. St. Paul,* 5 R. L. A. 786; *Texas R. R. Co. v. Robinson,* 23 S. W. 433; *Felch v. Concord R. R. Co.,* 29 Atlantic 577; *Texas R. R. Co. v. Roberts,* 20 S. W. 960. That whether or not any negligence is shown in this cause, is a question of fact for the jury, see *Tabler v. Sheffield, L. I. & Co.,* 87 Ala. 305, 6 Sou. Rep. 196, and cases cited; Thompson on Negligence Section 7393; *Louisville v. Loeb,* 66 S. W. 738; *Electric Co. v. Bowers,* 20 Sou. 345; *Hope v. K. C. R. R. Co.* 12 S. W. 205; *Green v. Metropolitan,* 58 N. Y. Suppl. 1039; *L. & N. R. R. Co. v. Young,* 45 Sou. 238; *Wirtzman v. R. R. Co.,* 53 N. Y. Supp. 905.

TILLMAN, GRUBB, BRADLEY & MORROW, for appellee. The cause should be affidmed on the authority of *Black v. L. & N. R. R. Co.,* 89 Ala. 313.

DENSON, J.—According to the complaint this action is based upon negligence of the defendant subsequent to discovering the plaintiff's intestate's peril. As applied to the case in hand, the law may be stated thus:

The motorman of a street car is not obliged to stop his car when he sees a man walking along the line of railway ahead of the car, but may continue to run the car in a proper manner until he is counscious of the fact that the pedestrian is unaware or heedless of danger. When he is thus conscious, it is his duty to use all reasonable care and diligence to avoid running the car onto the man. Seeing a man walking along the track, the motorman may assume that he will turn aside and out of the way of the car; but he cannot rest on such assumption so long as to reach a point where it will be impossi-

ble for him to control the car or to give warning in time to prevent injury to the man. In other words, "if a person be seen on the track of a railway, it may be assumed, if the person be an adult, that he will leave the track before the car reaches him; and this presumption may be indulged so long as the danger does not become imminent but no longer. From the time that danger is seen to be imminent it becomes the duty of the motorman to use the highest degree of care to arrest it, and a failure to do so will constitute culpable negligence, which may or may not fix liability, as that question may be affected by contributory negligence" on the part of the person injured, after realizing his perilous situation.—*Railway Co. v. Bowers,* 110 Ala. 328, 20 South. 345; *Schneider v. Mobile, etc., Co.* 146 Ala. 344, 40 South. 761; *L. & N. R. R. Co. v. Brown,* 121 Ala. 221, 25 South. 609; *Central, etc., Ry. Co. v. Foshee,* 125 Ala. 199, 218, 27 South. 1006; *Duncan v. St. Louis, etc., Co.,* 152 Ala. 118, 44 South. 418, 422; *Frazer v. L. & N. R. R. Co.,* 81 Ala. 185, 1 South. 85, 60 Am. Rep. 145; *Galveston City, etc., Co. v. Hewitt,* 67 Tex. 473, 3 S. W. 705, 60 Am. Rep. 32. The rationale of this doctrine is that 'the original negligence of the injured person, whereby he is placed in a perilous position, does not in a legal sense contribute to the result. It is a remote, not a proximate, cause. It is a condition, indeed, rather than cause, remote or proximate; and the law ascribes the disaster solely to a want of due care on the part of the person controlling the agency of the injury, but for whose negligence no hurt would have been done, notwithstanding the injured party's original fault."— *Central, etc., Ry. Co. v. Foshee, supra; Frazer v. L. & N. R. R. Co., supra;* 2 Shearman & Redfield on Neg. (5th Ed.) § 483.

The car which caused the death of plaintiff's intestate was being run along defendant's car line, which is laid longitudinally in Tenth avenue, in the city of Birming-

ham, and was going east to Gate City. According to the testimony offered by the plaintiff, her intestate, when killed, was walking along the track, ahead of the car, and had been so walking, for a considerable distance, and was near the poiont where defendant's car line crosses Forty-second street, when the car ran upon and killed him. There was a freight train, standing on the Southern Railway track, which was making considerable noise, which noise the evidence tended to show, affected the hearing of the passengers on defendant's car, and was also attacting intestate's attention. The testimony further tended to show that defendant's car was being run, when it struck the deceased, at a rate varying, according to the estimates of the different witnesses, from 8 to 30 miles an hour. It also tended to show that deceased, while walking along the track, held his hands behind him and was apparently unconscious of the approach of the car or of his peril; that the track was straight for half a mile westward from the point of accident, the direction from whence approached the car that killed intestate; that the motorman was on the front of the car, looking straight ahead; that no alarm whatever was given by the motorman, and there was no checking or slackening of the speed of the car until it was within 15 feet of the point where it ran upon deceased; and that it stopped 35 or 37 feet beyond or east of said point. Forty-Second street crossing was between the point where the accident occurred and where the Southern Railway track and defendant's track cross each other, and the evidence tended to show that the accident occurred near to and west of Forty-Seccond street, and about 50 yards from where the railroads crossed each other.

Howard Thomas, a witness for the defendant, testified that he was a passenger on defendant's car at the time plaintiff's intestate was killed; that he was standing on

the inside of the car, looking out of the front door, and that deceased was in his plain view; the deceased was walking on the outside of defendant's track, in a path 3 or 4 feet out from the ends of the cross-ties; that when his attention was drawn to deceased he was 30 feet or farther from the car, walking along said path (his back to the approaching car.) in the direction the car was pursuing; that about the time witness noticed the deceased the motorman sounded his gong, having sounded it several times before witness noticed him; that witness could see both the motorman and deceased, and that the deceased did not look back or stop before he got on defendant's track; that when the car got within 8 or 10 feet of where deceased was, in the path, deceased stepped right upon defendant's track in front of the moving car, whereupon the motorman immediately applied his brake, and reversed the motor, and tried to stop the car; that the car stopped in a short distance after striking deceased; that the motorman was in plain view of the witness and looking directly ahead all the time; and that the car would have passed deceased safely, had he remained in the path in which he was traveding. Other testimony tended to show that the deceased was walking between the rails all the while.

According to the principles of law heretofore announced, it was the duty of the motorman to do all in his power, with the means at hand, to conserve the safety of the intestate, after discovering he was in peril and was unaware of the approach of the car. At what time the motorman discovered intestate's peril, or realized that he was not aware of it, and whether, after discovering the danger of a catastrophe, he exercised the proper degree of care toward averting it, must, of course, be determined from the evidence. This determination is a question of law, and to be decided by the court, where the facts

are undisputed and the inference to be drawn therefrom is clear and certain. Where, however, the facts are disputed, or, if undisputed, where fair-minded persons may arrive at different conclusions thereon, the matter is for the jury.—*L. & N. R. R. Co. v. Allen,* 78 Ala. 494, 502; *City Council, etc., v. Wright,* 72 Ala. 411, 47 Am. Rep. 422; *Tabler v. Sheffield, etc., Co.,* 87 Ala. 305, 6 South. 196; *McDermott v. Severe,* 202 U. S. 600, 612, 26 Sup. Ct. 709. 50 L. Ed. 1162; *Nugent v. Boston, etc., Co.,* 80 Me. 62, 12 Atl. 797, 6 Am. St. Rep. 151.

Furthermore, the evidence shows that the car was equipped with a gong; and it cannot be disputed that the sounding of the gong is a means at the command of the motorman by which persons in dangerous proximity may be made aware of the approach of the car. It may be an all-sufficient means, and in the instant case it might have been sufficient to attract the attention of the intestate in time to admit of his extricating himself from his perilous situation.—*A. G. S. R. R. Co. v. Mc-Whorter,* 156 Ala. 269, 47 South. 84. These were also questions for the determination of the jury.

We cannot affirm that the evidence is so clear of doubt and free from inference adverse to the defendant as to make the case one for the determination of the court. We hold, therefore, that the court erred in giving the general affirmative charge in writing requested by the defendant.

When this cause was here on a former appeal, it was then determined, on the same evidence that is now presented, that witness Clayton was shown to possess that degree of experience and knowledge which would qualify him to testify, as an expert, as to the distance within which an electric car could be stopped, if running at the speed of the car in question, and that he could give his opinion on the subject.—*Birmingham, etc., Co. v.*

*Randle,* 149 Ala. 539, 43 South. 355. We adhere to the ruling then made. Upon its being shown, however (on the last trial), that Clayton was dead, his testimony given on the former trial was proved and admitted; but the court sustained an objection of the defendant to the opinion of witness Clayton in respect to the distance in which the car could have been stopped. This ruling was based on the objection, interposed by defendant, "that the question asked was, within what distance could this particular motorman have stopped this particular car? rather than within what distance a car properly equipped, going at a given rate of speed, could have been stopped by a motorman of experience." This objection was not made on the former trial. We have considered this, as well as the other objections, with care, and, being of the opinion that they are not well made, hold that the trial court erred in sustaining them.

For the errors pointed out, the judgment of the city court is reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and DOWDELL and SIMPSON, JJ., concur.