CORA MANGAN, Appellant, v. DES MOINES CITY RAILWAY COMPANY, Appellee.

NEGLIGENCE:    Acts Constituting—Injury From ''Oversweep'' of
1    Street Car Turning Corner.   A jury question on the issue of negligence of a street car company and the contributory negligence of an injured plaintiff-pedestrian is presented by evidence tending to show that the plaintiff, in crossing a street car track at a point where streets intersected, and where the general traffic was congested, was intercepted by a passing street car, and, not knowing that the car was going to turn at said intersection, took up a position for his own safety within the limits of a safety zone marked out by the company on the street pavement immediately adjacent to the tracks, and used exclusively for taking on and discharging

passengers; and that the motorman, knowing the position of plaintiff, and without any warning of danger to him, turned the car into the intersecting street, with resulting injury to plaintiff by being hit by the "oversweep" of the rear end of the car.

**STREET RAILROADS:** Injury to Person Near Tracks—"Oversweep"
2  of Car Turning Corner.  The operator of a street car may not assume that a pedestrian who is intercepted by a street car at intersecting streets will avoid being hit by the "oversweep" of the car as it passes around the corner, when such operator has reason to know that the pedestrian is unaware of the impending danger.

Headnote 1:  36 Cyc. pp. 1616, 1622.  Headnote 2:  36 Cyc. p. 1519.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MAY 12, 1925.

REHEARING DENIED OCTOBER 2, 1925.

ACTION for damages for personal injuries.  The opinion states the primary facts.  At the close of plaintiff's evidence, upon motion of the defendant, the jury, by direction of the court, returned a verdict for the defendant.  Judgment was entered against plaintiff for costs.  Plaintiff appeals.—*Reversed.*

*C. C. Putnam* and *Guy S. Calkins,* for appellant.

*W. H. McHenry* and *Corwin R. Bennett,* for appellee.

DE GRAFF, J.—The trial court, upon the conclusion of plaintiff's testimony, directed a verdict for the defendant.  The ruling is the provocation for this appeal.  Two questions arise:

1. NEGLIGENCE: acts constituting: injury from "oversweep" of street car turning corner.

(1) Did the evidence of plaintiff, offered in support of the pleaded negligence, present a jury question?  (2) Was the plaintiff guilty of contributory negligence as a matter of law?

The instant case is one of novel impression in this state, although many decisions from other jurisdictions are presented for our consideration in briefs and arguments. The difficulty lies in the differentiation of the cited decisions on the fact side.

Let us first inquire what are the specifications of negligence pleaded by the plaintiff in her petition. The allegations are: (1) The maintenance by the defendant at the place of the accident of a so-called "safety zone," which was, in fact, not a safety zone, but which, by the nature of its construction, misled the plaintiff, and caused her to believe that the area of such zone in which plaintiff stood was a safe place in which to stand, to permit the passing of the defendant's street cars; (2) the failure on the part of the operators of the street car to give warning to the plaintiff that the spot wherein she was standing, within the markings of the so-called safety zone, was an unsafe place to stand, by reason of the fact that the said street car, operated at such time and place, in rounding the curve would swing out and over the spot; (3) the failure of the motorman to stop said street car after the position of danger of plaintiff became known to him.

What are the record facts? The accident occurred at Second and Locust Streets in the city of Des Moines, and was caused by the rear end of a street car operated by the defendant, which struck the plaintiff as the car rounded a curve at said intersection. Locust Street extends east and west, and Second Street, north and south. The street car, known as a Douglas Avenue car, approached from the north on Second Street, and turned round a curve to the east on Locust Street. Plaintiff was not a prospective passenger on the car that struck her, but intended to become a passenger on a west-bound car. The accident happened about 5 o'clock on the afternoon of July 6, 1922. Apparently, it was a busy day in Des Moines. The city market was open, and a circus was in town. It was also the hour when many persons were homeward bound from their places of employment. Plaintiff had just left the city market house, at the northwest corner of Second and Locust Streets, and was intending to cross Second Street to the northeast corner of the intersection, to take passage on a west-bound street car for her apartment at 1107½ West Walnut Street. As she left the curb, she observed the line of traffic, the approach of the street car in question, and also an automobile coming from the same direction. She stopped in what is known as a "safety zone," and remained standing there until the rear end of the

street car struck her, as it swung out in rounding the curve. At the point of intersection, it is shown, a street car could be operated on a straight-ahead track directly south, as well as around the curve to the east. Both of these tracks were visible from the spot where plaintiff was standing. Plaintiff did not know that the car in question intended to round the curve. Her testimony is as follows:

"The car coming from the north had stopped there [north of the intersection], loaded some passengers and unloaded; and, as I stood there just a few moments, the motorman was looking out of the window toward me. He looked at me when he started the car up, and I turned, expecting the car to go straight ahead, and was waiting to see it pull on up past me, to get my chance when the traffic went east and west, to cross. I did not at that time know which way the Douglas car went from that corner. I did not at that time know that the car would turn to the east. I never did. I saw the safety-zone sign, and that is why I stopped in there. When I stepped into the zone, the safety-zone sign was standing in the southwest corner of the zone, right in the corner. I stood right by the side of that, inside of the zone. I stood inside of the zone to the north. The car was standing there while I stood by the safety-zone sign. I heard him release the brakes for the car to go ahead. Then I turned and looked southeast. Then I was struck and knocked down."

The safety-zone system of the city of Des Moines was inaugurated by the defendant city railway company, and was approved by a resolution of the city council of the city of Des Moines. The resolution read as follows:

"Whereas, the Des Moines City Railway Company desires to establish safety zones in the loop district for the safety and convenience of the loading public, and to expedite the loading of passengers during the rush hours, said safety zones to be designated by metal markers painted white and marked 'safety zone,' the company to furnish the markers and be responsible for the placing and care of the same. Therefore, be it resolved by the city council of the city of Des Moines that the Des Moines City Railway Company be, and is hereby, authorized and directed to establish safety zones at such places as may be determined by the supervisors, and that no parking of cars be

permitted inside of the safety-zone limits after they have been placed."

The zone in question was placed in conformity to the quoted resolution; and it is contended by the appellant that it was constructed in such a manner that it extended so far south that, when any of the cars coming from the north turned toward the east around the curve, the rear end of the street car so turning would pass over part of the area marked out as a safety zone. This contention is supported by the evidence. A primary fact question is suggested at the threshold of this opinion: Could the jury have found from the evidence that the motorman of the street car in question knew that the place occupied by the plaintiff was a position of peril to her? An affirmative answer must be given.

We next inquire, as a matter of law, whether a motorman of a street car has the right to assume that an adult pedestrian will not stand or remain so close to a street railway track as to

2. STREET RAIL-ROADS: injury to person near tracks: "over-sweep" of car turning corner.

be struck by the rear end of a car as it swings out in rounding a curve. No answer can be given that will afford a rule of universal application. The answer must be governed by fact limitations. It is the knowledge of possible injury, and not the certainty of it, that imposes the duty upon the operator of a street car to use all reasonable means to avoid injury.

"* * * operatives cannot speculate on the probability or not of injuring one in a perilous position." *Paris Transit Co. v. Fath* (Tex. Civ. App.), 216 S. W. 482.

It is said in *Birmingham R., L. & P. Co. v. Williams,* 158 Ala. 381 (48 So. 93):

"While it is true that a motorman may, upon seeing a person upon the track, assume that he will turn aside from the dangerous position and out of the way of the car, yet the law does not accord to him the right to indulge the assumption beyond the time when the person's danger is seen to be imminent."

See, also, *Randle v. Birmingham R., L. & P. Co.,* 158 Ala. 532 (48 So. 114).

In *Hayden v. Fair Haven & W. R. Co.,* 76 Conn. 355 (56 Atl. 613), it is held that the motorman's right to presume that plaintiff was aware of the danger and would get out of the way

is subject to the limitations, "until it is apparent, or by the exercise of reasonable diligence would be apparent to him, that the person is in danger, and is not aware of the danger, or is so situated that he cannot avoid the danger."

To what extent, if at all, did the plaintiff have the right to rely on the information imparted to her by the markings of the safety zone in question? The defendant initiated and maintained this zone, and its agent had supervised its location. The defendant railway company created the situation, so far as the safety zone is concerned. It will be presumed that the defendant knew that a person occupying the particular spot which the plaintiff occupied, would be in danger of being injured by the overswing of a car rounding this particular curve. Was the plaintiff bound to know this fact?

Pedestrians and street cars had the equal right upon this intersection. It is quite manifest that a pedestrian on said street could be misled, under the circumstances of this case; and it was for the jury to say whether or not the defendant was chargeable with negligence in maintaining the device as it was maintained, and whether or not the motorman exercised reasonable and ordinary care in rounding the curve in the manner shown, knowing, or being in a position to know, that plaintiff was occupying a perilous position. If we concede that the duty imposed upon the parties is reciprocal, nevertheless the law requires a motorman to keep a vigilant lookout to avoid injuries to persons lawfully upon the street. This is elementary. *Borg v. Des Moines City R. Co.*, 190 Iowa 909; *Davidson Bros. Co. v. Des Moines City R. Co.*, 170 Iowa 467. In the latter case, the projecting steps at the rear of the car were the proximate cause of the injury. It is said:

"And even if he [motorman] was not forgetful, and continued to move his car in the honest belief or opinion that there was room for him to pass without colliding with the truck, the position of which was directly under his eye, it would still be a question of fact, and not of law, whether he was exercising that reasonable measure of care that his duty required."

In *Theisen v. Pittsburgh R. Co.*, 256 Pa. St. 475 (100 Atl. 994), the motorman saw the pedestrian, and was in a position to realize her danger, but gave her no warning as the car rounded

the curve.  The situation in the *Theisen* case presents facts not involved in the instant case, but it is apparent that the plaintiff had avenues of escape from the perilous position in which she placed herself.  She was struck and injured by the overhanging end of a street car which came from the northwest and rounded a curve to the east.  In opinion it is said:

"Was it [the car] moving too fast, under the peculiar circumstances there existing, and in view of the fact that it was covering a considerable portion of a public walk * * * and in view of the further fact that the motorman saw plaintiff before the car had passed, and knew much better than she that the rear end would cover the walk as it rounded the curve?"

See, also, *Mittleman v. New York City R. Co.*, 56 Misc. (N. Y.) 599 (107 N. Y. Supp. 108); *Brentlinger v. Louisville R. Co.*, 156 Ky. 685 (161 S. W. 1107).

In *Fritch v Pittsburg R. Co.*, 239 Pa. St. 6 (86 Atl. 526), the plaintiff was injured by an overhanging end of a street car which approached him from behind.  It is said:

"Appellee was not familiar with the operation of cars at the place of accident, and had no reason to anticipate the danger to which he was subjected.  He was not bound to foresee that the fender of the car would sweep the entire alley and extend out over the curb.  On the other hand, appellant knew the situation, and either did anticipate the danger to pedestrians or should have done so, and thus a very high degree of care was required, under the circumstances.  The learned trial judge could not, as a matter of law, declare that appellant was not negligent, or that appellee was guilty of contributory negligence, without invading the province of the jury."

It may be conceded that a motorman of a street car is not obliged to stop his car when he sees a person walking along the line of the track, or so near the track that injury may result if the car proceeds; and he may assume that an adult person will turn aside, and get out of the way of the car; but he cannot rest absolutely on such an assumption, under all circumstances.  The true rule is that, from the time that danger is seen to be imminent, it becomes the duty of the motorman to use the highest degree of care, which is ordinary care under the circumstances, to prevent an injury.

In *Schwartz v. New Orleans & C. R. Co.*, 110 La. 534 (34 So. 667), the plaintiff was injured as the street car rounded a curve. It is there said:

"Pedestrians and cars had equal right upon the crossing, and one could not use his right so as unnecessarily to create danger for the other. * * * Defendant should have known of this danger, and guarded against it. He who creates a danger upon or near a public highway must see to it that no harm results therefrom to the public. * * * It makes no difference that the danger which defendant created by the manner of running its cars at this crossing threatened no one in particular, and might have continued long in existence without anyone suffering from it. Suffice that it existed, and was susceptible of causing injury, and was the result of negligence. Wharton, Neg., Sec. 109."

In the case of *Miller v. Public. Service Corp.*, 86 N. J. L. 631 (92 Atl. 343, L. R. A. 1915 C 604), the plaintiff signaled the car that struck her to stop, and this was before it went around the curve. It did not stop where plaintiff stood, but kept moving; and in making the turn, the overhang struck the plaintiff. In the *Miller* case, the car could go in no direction except around the curve, and plaintiff knew this; and she also knew that the rear of the car would swing out over the street as it went around the curve. The rule stated was predicated on the knowledge of plaintiff of the approach of the street car and of the existence of the curve. The case at bar is clearly distinguishable from the *Miller* case on the facts, and we have no occasion to pass judgment on the rule stated and applied in that case.

Appellee also relies on the doctrine of the law stated in *Widmer v. West End Street R. Co.*, 158 Mass. 49 (32 N. E. 899). In that case, plaintiff saw the street car before it reached her, and turned in another direction, as the car proceeded around a curve. She was struck by the rear end of the car. It was held that the motorman was justified in assuming that the plaintiff would not come so near the rear of the car as to be struck by it. Apparently the plaintiff knew that the car was making the turn, and that the only way it could go was around the curve. There is no evidence that there was a straight-ahead track.

In the decision of the case at bar, we must take into consideration that the plaintiff had no reason to believe that the place in which she was standing was a place of danger. In fact, she was harboring her sense of security by the safety zone which the defendant company had installed. Under the circumstances, a jury question was presented.

Is the plaintiff chargeable with contributory negligence as a matter of law? We think not. Conceding that a pedestrian must be presumed to take notice of the obvious fact that the body of a street car, in rounding a curve, must necessarily swing out some little distance from the track on the outside of the curve, plaintiff herein had no reason to believe that the markings of the safety zone would be within the area of the overswing. This is not a case where plaintiff misjudged what would be a safe distance to avoid injury from a passing street car by reason of the overhang of the car as it rounded a curve. *Gribbins v. Kentucky T. & T. Co.*, 150 Ky. 276 (150 S. W. 338). As a general proposition, the question of contributory negligence is one of fact for the jury; although cases arise in which a person is so careless, or his conduct so violative of all rational standards of conduct applicable to persons in a like situation, that the court can say, as a matter of law, that the plaintiff was guilty of contributory negligence. In *Garvey v. Rhode Island Co.*, 26 R. I. 80 (58 Atl. 456), it is held that a pedestrian must be presumed to take notice of the obvious fact that the body of a street car, in rounding a curve, will swing out some distance from the track, and that for one to place himself within the reach of the swing or overhang while the car is in motion, will bar recovery of damages in an action against the company. The principle stated, however, must be applied in the light of the facts. See, also, *Riddle v. Forty-Second St. M. & St. N. Ave. R. Co.*, 173 N. Y. 327 (66 N. E. 22).

In *Schwartz v. New Orleans & C. R. Co.*, supra, the plaintiff was familiar with the crossing where the accident happened, knew that the car that struck him would make a turn, and also knew there was a wide space between the tracks to his left that he could easily reach without any interference. He stood still for the reason that he thought he was safe. The opinion reads:

"He does not pretend to say that he was not entirely self-

possessed, and could not have gotten out from between the cars if he had chosen to do so; * * * he says expressly that he remained there because he did not think he was in danger. * * * he considered himself safe if he kept straight and quiet, and he did so.''

In considering the question of contributory negligence, the court said:

''* * * We have no hesitation in saying that plaintiff was not bound to anticipate this danger. He evidently did not, in point of fact, know of it; for, if he had, the evidence leaves no doubt he would have avoided it. * * * As he stood upon this crossing at a place he had a perfect right to be, he took upon himself such dangers only as are incidental to the usual and ordinary running of cars. He was not bound to anticipate dangers such as any one of the general public could not be supposed to know of and guard against. If there was such unusual, hidden danger, the duty rested upon the defendant, either not to create it, or to give the public due warning of it.''

In the instant case, the plaintiff did not know that the car that struck her was about to turn the corner. She was not familiar with the corner or the movement or direction of street cars leaving that corner. She did not know that she was in danger, and she relied upon the safety zone as a safe place to stop.

In *Laurent v. United Rys. Co. of St. L.* (Mo.), 191 S. W. 992, the street car company maintained a sidewalk or platform in the street, which was held out as a safe place for a person to stand. The plaintiff was standing at this place, when struck by the overswing of a moving street car. There were no signs and no area marked in the street. In commenting on this situation, the court said:

''In the absence of knowledge or notice to the contrary, such an invitation to an intended passenger had the right to presume and to rely upon the presumption that it was reasonably safe to stand upon said walk while waiting for cars. * * * What man or woman of ordinary prudence would reasonably have expected that a car in rounding a curve on a public street would have extended two or three feet over the sidewalk the company had placed there for him and her to stand upon while awaiting

for the car approaching it for the purpose of taking passage thereon, without he or she had previous knowledge or notice of the degree at the curve, the length of the car, or the approximate extension the car actually extended over the same?"

We must recognize that a pedestrian has rights in the street, whether he is a prospective passenger of the defendant's or not.

The court further said, in the *Laurent* case:

"* * * in all such cases, not only the physical condition must be seen, but the lurking danger incident thereto must also be of such a character that a person of ordinary prudence would, by the exercise of ordinary care, have discovered it in time to have avoided the injury; or, in other words, if the danger itself is not so apparent to such a person, although the physical condition which causes it is, the court cannot declare, as a matter of law, that the injured party was guilty of contributory negligence, but must submit that fact to the jury, under proper instructions."

In *Kelly v. Chicago City R. Co.*, 283 Ill. 640 (119 N. E. 622), the plaintiff was a prospective passenger, and thought that the street car would stop. He knew that the car would round a curve to the east, in its further course through the streets. He approached the car with the intention of getting on. The car did not come to a full stop, but suddenly increased its speed, and went around the curve, striking the plaintiff. He was held not to be guilty of contributory negligence as a matter of law, under the circumstances of that case.

In the case at bar, plaintiff honestly believed that the place where she was standing was a safe place, and she had the right to rely upon the appearances created by the defendant company. Her rights depended on what was reasonably necessary as the situation appeared to the plaintiff, and not as the situation was in fact. *Clark v. American Exp. Co.*, 197 Mass. 160 (83 N. E. 365). Whether ordinarily prudent persons would have done what the plaintiff did under the circumstances is the test; and it cannot be said, as a matter of law, that she was guilty of negligence contributing to her injury. Negligence cannot be imputed to one who is deceived by appearances calculated to deceive an ordinarily prudent person. Care in avoiding injury implies that there is or would be, with all prudent persons, some-

thing to create a sense of danger; and it is for the jury to say whether or not the circumstances are such as would put a prudent and cautious person upon his guard. *Dusold v. Chicago G. W. R. Co.*, 162 Iowa 441.

We conclude, therefore, that the cause should have been submitted to a jury. Wherefore, the judgment entered is— *Reversed.*

FAVILLE, C. J., and EVANS and VERMILION, JJ., concur.