## HERING v. CITY OF DETROIT.

1. CARRIERS—STREET RAILWAYS—PASSENGERS.

> One who had not offered to board a street car, was not at the loading place, and had not been invited or accepted as a passenger at the time he was struck and injured by the overhang of a street car as it rounded a curve, was not a passenger.

On liability of street railway company to one hit by swing of car at curve, see annotation in 16 L. R. A. (N. S.) 890; 40 L. R. A. (N. S.) 133.

On liability of street railway company for injury to person in "safety zone," see annotation in 41 A. L. R. 376.

2. STREET RAILWAYS—EVIDENCE—COMMON KNOWLEDGE THAT REAR
OF CAR WILL OVERHANG IN ROUNDING CURVE.

That a street car will overhang at the rear end in rounding
a curve, is of such common knowledge that pedestrians are
presumed to know it, and the car operator has no duty to
warn them thereof, except under special circumstances.

3. SAME—NEGLIGENCE—DIRECTED VERDICT.

Where one not a passenger, not seen by the motorman to be
in a place of peril, and not at a loading place, was struck
by the overhang of a street car as it rounded a curve, there
was no negligence, as matter of law, on the part of the
operator, and therefore recovery may not be had for the
injuries so inflicted.

Error to Wayne; Marschner (Adolph F.), J.
Submitted June 5, 1928. (Docket No. 18, Calendar
No. 33,763.) Decided October 1, 1928.

Case by Louise Hering, administratrix of the es-
tate of Herman Hering, deceased, against the city of
Detroit and another for the alleged negligent killing
of plaintiff's decedent. Judgment for defendants on
a directed verdict. Plaintiff brings error. Affirmed.

*Baubie & Baubie,* for appellant.

*Clarence E. Wilcox,* Corporation Counsel, and
*Hazen J. Payette,* for appellees.

FEAD, C. J.  At the intersection of Gratiot and
Grandy avenues, in the city of Detroit, two lines of
street car tracks run approximately east and west
on Gratiot and one line turns northerly on Grandy.
On October 25, 1925, Herman Hering came to this
intersection, inquired of the switchman, a 16-year
old boy named Smitz, the way to reach a certain
destination; was told to take a Baker car north on

Grandy and change to a Crosstown car. A Davison car stood at the switch waiting to go north. Hering could have taken that car to a Crosstown but was not so instructed. When talking with Smitz, Hering stood about opposite the front of the car, or two or three feet ahead of it. At once after directing Hering to take a Baker car, Smitz went to the switch and threw it. Hering moved from the place of his conversation with Smitz. The Davison car started around the curve. When the car was well around, Hering, facing the car, stooped to pick up some money on the street, was struck on the forehead by the abutment of the door some few inches from the rear of the car, thrown under the wheel of a passing truck, and received injuries from which he subsequently died.

The location of the Davison car at the switch was a regular stopping place for passengers. There were no marks to indicate a safety zone, but an ordinance of the city provided a safety zone at every established street car stop, to include a 5-foot strip the whole length of the car. The place of boarding the car was at the rear door, about 40 feet from where Hering first stood. The street was narrow. A line of automobiles stood south of the car and started when it began to move, but there was room for decedent to step out of danger. The Davison car started in the usual way and at the usual speed. The motorman did not see Hering at all. Hering was not told where to wait. The testimony did not show whether warning gong or alarm was sounded when the car started nor whether there was a conductor on the car. The ordinary overhang of the car beyond the rail was one foot, nine inches, and it increased to three feet, eleven inches, when the rear of the car was at the switch point.

Hering was 60 years old, retired as a farmer, engaged in teaming and selling real estate, was earning $10,000 per year, was acquainted with the city, and had brought produce to market for some 20 or 30 years. He lived at Royal Oak.

This is an action for damage for negligent injuries. The court directed a verdict for the defendants on the grounds both of contributory negligence of decedent and want of negligence by defendants.

Decedent had not offered to board a car, was not at the loading place, had not been invited or accepted as a passenger, and was not a passenger when struck. 10 C. J. pp. 611–617; *Ramonas* v. *Railway Co.,* 194 Mich. 69.

No similar case seems to have arisen in this State, but the applicable rules are well settled. The fact that a street car will overhang at the rear end in rounding a curve is of such common knowledge that pedestrians are presumed to know it, and the car operator has no duty to warn them of it. The motorman may assume that pedestrians will not put themselves in the way of the overhang, or, if in a place of danger, will step out when injury threatens. Consequently, the motorman is not bound to keep watch of the overhang zone until the rear of a car has cleared it, but is free to discharge his duty of lookout ahead and to operate his car in the manner generally recognized as careful. *Gannaway* v. *Power Co.,* 77 Wash. 655 (138 Pac. 267); *Matulewicz* v. *Railway Co.,* 107 N. Y. App. Div. 230 (95 N. Y. Supp. 7); *Jelly* v. *Railway Co.,* 76 N. J. Law, 191 (68 Atl. 1091); *Gribbins* v. *Traction Co.,* 150 Ky. 276 (150 S. W. 338); *Kuhn* v. *Light Co.,* 158 Wis. 525 (149 N. W. 220, Ann. Cas. 1916E, 678); *Garvey* v. *Rhode Island Co.,* 26 R. I. 80 (58 Atl. 456); *Miller* v. *Public Service Corp.,* 86 N. J. Law, 631 (92 Atl. 343, L. R. A. 1915C,

604); 16 L. R. A. (N. S.) 890, note; 40 L. R. A. (N. S.) 133, note; L. R. A. 1915C, 604, note.

Special circumstances, however, impose special obligations upon the operator of a car rounding a curve. Thus, it is held that the duty to warn a pedestrian or to stop the car arises if the operator sees the pedestrian in a place of danger, apparently unaware of his peril. *Texas Electric Ry.* v. *Couts* (Tex. Civ. App.), 250 S. W. 266; *Mittleman* v. *Railway Co.*, 107 N. Y. Supp. 108; *Wechsler* v. *Railways Co.*, 247 Pa. 96 (93 Atl. 19). The motorman will be negligent if he approaches the curve in such manner as to indicate an intention to stop and then increases his speed without warning so that passengers crowding close to board the car cannot extricate themselves (*Kelly* v. *Railway Co.*, 283 Ill. 640 [119 N. E. 622]).; and the operator of the car is held to proportionate care where the overhang sweeps a special loading place provided by the defendant and impliedly held out for use by the public as a safe place. *Laurent* v. *Railways Co.* (Mo.), 191 S. W. 992. In *Mangan* v. *Railway Co.*, 200 Iowa, 597 (203 N. W. 705, 41 A. L. R. 368), principally relied on by plaintiff, both the safety zone was provided by defendant as a loading place and the motorman saw plaintiff in a position of known peril from the overswing of the car.

The application of the general rules to the case at bar and its distinction from the exceptional cases are clear. The zone had no bearing on defendant's negligence, as it was not provided by defendant as a safe loading place, but was established by the city in its governmental capacity and the ordinance did not purport to interfere with the ordinary operation of street cars nor impose special duties upon the operators. The tracks gave decedent notice that the Davison car could and might turn north. His con-

versation with the switchman contained no intimation or assurance that the car would go east. Decedent moved, after his conversation with the switchman, and the motorman, had he seen decedent, would have had the right to assume that he would use due care in watching the car and would not put himself, or remain, in a place of peril. *Gradyszewski* v. *Railway,* 173 Mich. 13. The motorman did not see decedent, and we cannot subscribe to the doctrine that the motorman of a street car may be required to neglect his duty of lookout ahead by being charged with the duty of watching the overhang swing of the rear end of his car and held negligent for failure to observe a person in danger therefrom, where, in fact, he did not see such person at all.

We fail to find evidence of negligence on the part of defendant, and the judgment is affirmed.

North, Fellows, Wiest, Clark, McDonald, Potter, and Sharpe, JJ., concurred.