### ELDER, RECEIVER v. RUTLEDGE, ADMX.

[No. 27,389. Filed May 29, 1940. Rehearing denied September 19, 1940.]

460

*McHale, Arthur & Myers* and *Herbert J. Patrick,* all of Indianapolis; and *Edgar M. Blessing,* of Danville, for appellant.

*Fenton, Steers, Beasley & Klee,* and *James C. Jay,* all of Indianapolis; and *Otis E. Gulley,* of Danville, for appellee.

SHAKE, J.—The appellee, as administratrix of the estate of Bert C. Rutledge, recovered a judgment against the appellant for negligence resulting in the death of her decedent. This appeal is from the denial of the appellant's motion for a new trial. The facts are not materially in dispute and the questions presented resolve themselves into one of law. A description of the place where the accident occurred and the circumstances attending it are essential to a presentation of the case.

Ohio Street in the City of Indianapolis runs east and west and intersects Pennsylvania Street at an angle of 90 degrees. Massachusetts Avenue extends northeast from said intersection at an angle of 45 degrees to Ohio Street. Ohio Street and Massachusetts Avenue each carry two parallel car tracks. The south track on Ohio is for the accommodation of east bound cars and the southeast track on Massachusetts is for cars proceeding northeasterly on said avenue. Said described tracks are connected by a curved switch in said intersection. There is room for two lines of east bound vehicular traffic between the south track on Ohio Street and the south curb thereof. A traffic lane for the use of pedestrians, approximately 16 feet wide, connects the sidewalk along the west side of Pennsylvania Street north and south of Ohio, and there is a safety zone about six feet wide between the south track on Ohio

Street and the vehicle lane extending west from the crosswalk.

The decedent approached the intersection of Ohio Street and Pennsylvania from the north along the sidewalk on the west side of Pennsylvania. A traffic officer was stationed in the intersection. When the decedent reached the curb of Ohio Street the officer was directing traffic north and south on Pennsylvania Street. One of the appellant's east bound interurban cars was standing west of the crosswalk. The decedent attempted to cross Ohio Street in front of said interurban. As he passed the car the officer signaled for the traffic to proceed east and west along Ohio Street and the decedent stopped in the safety zone. Two parallel lines of automobile traffic immediately started east along the south side of Ohio Street and over said intersection. A few seconds later the interurban also started. Normally, the south side of the car extended two feet over the south rail. The car was 60 feet in length and as it turned northeasterly into Massachusetts Avenue the back end thereof swung into said safety zone an additional two feet. The decedent could not proceed across Ohio Street because of the moving automobile traffic which he faced, and he was struck on the head by an extending door handle as the rear end of the car swung into said safety zone. The decedent suffered a fractured skull, either from the blow of the moving car or from a resulting fall, from which he died.

The motorman operating the car gave undisputed testimony that when he started forward the way ahead was clear and that he did not see the decedent prior to the accident. Other witnesses said that the space between the east bound vehicles on the south side of Ohio and the southwest corner of the car as it turned north-

east into Massachusetts where the decedent was standing when he was struck, was about one foot wide.

The traffic lane for pedestrians across Ohio Street and the safety zone parallel to the south rail of the south track were marked on the pavement, pursuant to a municipal ordinance of the City of Indianapolis, which provided among other things:

> "Section 15. Pedestrians' Right of Way: (a) The operator of any vehicle or street car shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk . . . except at intersections where the movement of traffic is being regulated by public officers . . . but at all places a pedestrian having lawfully started across a street at an intersection shall have the right of way until such pedestrian has reached the opposite side of the street."

The theory and essential ingredients of actionable negligence are tersely stated in *Faris* v. *Hoberg* (1893), 134 Ind. 269, 274, 275, 33 N. E. 1028, as follows:

> "In every case involving actionable negligence, there are necessarily three elements essential to its existence: 1. The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; 2. A failure by the defendant to perform that duty; and, 3. An injury to the plaintiff from such failure of the defendant.
>
> "When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient.
>
> "As a question of evidence, the facts are given to the jury, and if there is no evidence whatever as to one of the three elements, then, as a question of law, the plaintiff has failed, and the court may direct a verdict for the defendant."

The appellant most earnestly insists that under the facts summarized above there was no duty on the oper-

ator of the interurban car to keep a lookout to the side and rear of such car so as to be able to warn pedestrians or other travelers upon the street of the danger from the overhang or outswing of such rear end, and that inasmuch as the motorman did not actually see the decedent and appreciate that he was in a place of imminent peril, the appellant was not shown to be guilty of any negligence. Upon this assumption all the alleged errors are predicated, and the case may be considered without particular reference to the specific assignments by which they are presented to us.

The law applicable to situations akin to the one at bar has been declared by a number of courts of other jurisdictions. Most of these cases have been collected and annotated in 9 N. C. C. A. 678, 17 N. C. C. A. 635, 23 N. C. C. A. 849, and 28 N. C. C. A. 617. The appellant relies principally upon seven cases which we shall review.

*Hering* v. *City of Detroit* (1928), 244 Mich. 293, 296, 297, 221 N. W. 278, was a case where a pedestrian who was standing in a safety zone and facing a moving street car was struck by the outswing of the car as he stooped to pick up some money. In holding the motorman not guilty of negligence, the court stated the general rule to be that:

> "The fact that a street car will overhang at the rear end in rounding a curve is of such common knowledge that pedestrians are presumed to know it, and the car operator has no duty to warn them of it. The motorman may assume that pedestrians will not put themselves in the way of the overhang, or, if in a place of danger, will step out when injury threatens. Consequently, the motorman is not bound to keep watch of the overhang zone until the rear of a car has cleared it, but is free to discharge his duty of lookout ahead and to operate his car in the manner generally recognized as careful."

It was then stated that the ordinance establishing the safety zone did not impose any special duties upon the operators of cars, and that there was ample room for the decedent to step out of the place of danger. The court guarded its conclusion with the observation that:

> "Special circumstances, however, impose special obligations upon the operator of a car rounding a curve."

*Duteau* v. *Seattle Electric Co.* (1907), 45 Wash. 418, 419, 88 P. 755, does not recite the facts there involved. The opinion is authority for the abstract proposition that:

> " 'When a motorman sees a man ahead of him alongside of the track, or approaching the track upon which his car is traveling, and this man is apparently able to take care of himself, there is nothing about the appearance of the man which indicates any inability to care for himself, the motorman has a right to assume that this man will act as an ordinary, careful, prudent man would act under such circumstances, and it is not necessary for him to stop his car until he sees that this man is in a position of apparent danger.' "

*Gribbins* v. *Ky. T. & T. Co.* (1912), 150 Ky. 276, 150 S. W. 338, considered the sufficiency of a complaint. The court pointed out that under the facts appearing, the pedestrian, who was struck by the outswing of the car, had the entire width of the street beyond the car track in which to walk and that the accident was due to her failure to exercise ordinary care for her own safety. The court distinguished the case from *Mittleman* v. *New York City R. Co.* (1907), 56 Misc. Rep. 599, 107 N. Y. Supp. 108. The New York case is much more in point with the case at bar. There the plaintiff was crossing a street at a place where the car track made a sharp curve, to the side of which was an un-

guarded excavation about two feet from the track. The plaintiff passed in front of the car just before it started and she was struck and thrown into the excavation by the outswing as the car proceeded around a curve. The court held that it was the duty of the motorman to wait for the plaintiff to reach a place of safety before starting the car, and that the plaintiff had a right to assume that the car would not be started or so operated as to strike her until she had enjoyed a reasonable opportunity to pass the point of danger.

*Miller* v. *Public Service Corp. of N. J.* (1914), 86 N. J. L. 631, 92 Atl. 343, L. R. A. 1915C 604, discloses that the plaintiff was standing beside a street car track at a curve waiting to board a car. She was struck by the outswing of the rear end of a car when it did not stop and she did not move away from the point of danger. It was held that as the motorman approached he had a right to presume that the plaintiff was in a place of safety or would step out of the danger zone. The case is distinguished from those where a motorman knows or is chargeable with knowledge that if the car proceeds it will run down a person who is on, near, or about to cross the track.

In *Kelly* v. *Chicago City Ry. Co.* (1918), 283 Ill. 640, 644, 119 N. E. 622, the Supreme Court of Illinois said:

"It is the general rule . . . that a motorman may rightfully assume, in rounding a curve, that an adult person standing near the tracks and apparently able to see, hear and move, and who has knowledge of the curve in the track and that in rounding a curve the rear end of a street car will swing beyond the track, will draw back and avoid injury, and the motorman is under no obligation to warn such person against such open and obvious danger."

It is to be noted that the rule stated is restricted to those situations where the pedestrian is able to see, hear, and move to avoid the injury. In the case at bar there was evidence that the decedent had no opportunity to reach a place of safety. He was between the moving interurban car and the double line of motor traffic.

*Zalewski* v. *Milwaukee E. R. & L. Co.* (1935), 219 Wis. 541, 263 N. W. 577, considered a situation where a passenger alighted from a street car at an intersection near a curve where a safety zone was provided for the use of pedestrians. Had she remained where she alighted until the car departed, she would not have been injured, but she walked a distance of approximately 50 feet parallel with the track before undertaking to cross to the curb. Meanwhile, the car started moving and she was struck and injured by the outswing of the rear end of the car. Having alighted from the car that struck her, the plaintiff was acquainted with its presence and the direction in which it would proceed, and the court said that even if there was some actionable negligence on the part of the motorman, the plaintiff's contributory negligence would preclude recovery. After stating the general rules expressed in the cases already reviewed, the court pointed out that by taking but a single step to the south, east, or west the plaintiff could have instantly and safely placed herself beyond the point of danger.

We do not agree with the Supreme Court of Utah in *Miller* v. *Utah Light and Traction Co.* (1939), 96 Utah 369, 377, 384, 86 P. (2d) 37, where it was held that a motorman has discharged his duty to keep a proper lookout when he is "watchful for dangers which may reasonably be anticipated, keeping his visual consciousness awake as to things in front of him and coming into his path from the sides, or likely

to come in from the sides, back substantially as far as he can see without turning his head so far as to take the part immediately in front of him out from his field of vision." What constitutes due care must always be tempered by the surrounding circumstances and conditions. This is ordinarily a question of fact to be determined by the jury under appropriate instructions, and we do not think it proper for a court to undertake to declare an invariable rule governing such situations. We do, however, approve the court's ultimate conclusion where it said:

> "So too the law does not require operators of street cars or motor buses to keep a lookout to the rear to see that adults apparently in full possession of their faculties do not either move into the side of a car passing in front of them or unnecessarily place themselves in a position to contact the overhang of the car on a curve."

At the risk of extending this opinion, it seems proper to point out again that Rutledge was not in the wrong in undertaking to cross Ohio Street, the traffic signal being with him when he started, and that by the terms of the city ordinance he had the right to continue on his way in preference to vehicles until he reached a place of safety. The motorman was chargeable with such knowledge of the situation as the exercise of ordinary care on his part would have disclosed to him. The jury was therefore warranted in inferring that the motorman saw or ought to have seen the decedent as he passed in front of the car and ought to have known that the decedent did not have time to reach the south curb after the traffic was changed. The motorman was likewise charged with knowledge of the extent that the outswing of the rear of the car would encroach on the safety zone, and that the motor

traffic, which started immediately before the car moved, would cut off the possibility of the decedent proceeding further. In short there was such a showing of facts that the jury might have inferred, as it evidently did, that the motorman knew or ought to have known that the decedent was in a place of extreme peril, without fault on his part, when the car was started. Upon this assumption of facts, the jury was justified in concluding that the motorman was negligent, and we would not be warranted in disturbing that conclusion. We are supported in this view by the following cases: *Bryant* v. *Boston Elevated Railway* (1912), 212 Mass. 62, 98 N. E. 587; *Mittleman* v. *New York City R. Co., supra; Fritch* v. *Pittsburgh Rys. Co.* (1913), 239 Pa. 6, 86 Atl. 526; *Forbes* v. *United Electric Railways Co.* (1929), 49 R. I. 465, 144 Atl. 154.

The case at bar is to be distinguished from those that involve pedestrians who knowingly place themselves in positions of peril, or come into dangerous proximity with cars without the knowledge of the operators. Motormen may, of course, assume that pedestrians will exercise care commensurate with the risks to which they voluntarily expose themselves, and they have no duty to keep a lookout to the rear and sides of their cars in the absence of circumstances reasonably calculated to require such precaution. The appellant's suggestion that the decedent might have avoided injury by moving parallel with the car to a point of safety is not persuasive. The prudence of his conduct must be measured in the light of the situation as it appeared to him at the time, rather than as deliberate calculation might have demonstrated what it should have been, after the accident occurred. The emergency with which he was suddenly confronted was such that the question of whether he was guilty of

contributory negligence was one of fact for the jury rather than of law for the court.

The judgment is affirmed.

NOTE: Reported in 27 N. E. (2d) 358.