[Sac. No. 5777.   In Bank.   May 31, 1946.]

LILIAN BRANDENBURG, as Administratrix, etc., Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Respondents.

Brandenburger & White and W. A. White for Appellant.

Thos. J. Straub, F. H. Pearson and Jay L. Henry for Respondents.

Huntington P. Bledsoe and Donahue, Richards & Hamlin as Amici Curiae on behalf of Respondents.

TRAYNOR, J.—On June 11, 1943 plaintiff, his wife, and three small children boarded a streetcar of defendant corporation travelling north on 28th Street in Sacramento. The car was operated by one man, defendant Colwell. When the car approached P Street, plaintiff signalled the motorman to stop. At the corner of 28th and P Streets, adjacent to the track on 28th Street, there was a safety zone approximately 4 feet wide and 44 feet long outlined on the pavement by broad white stripes and marked at the corners with white buttons. Plaintiff and his family alighted from the front door of the car to the safety zone. After the stop, the car turned to the west around a curve to P Street. As the car turned, the rear end overlapped the safety zone about two feet. The motorman was aware of the overlap but did not warn plaintiff that the car was going to turn west on P Street or call plaintiff's attention to the danger from the overlap. Plaintiff knew that there were curved tracks at that corner and that the car might therefore turn, but he did not "know definitely that it would turn." He testified that had he known the car was going to turn west on P Street, he would have remained on the car

until it reached 27th Street, because he would then have been one block nearer his destination. While standing in the safety zone, plaintiff was struck by the rear end of the car and seriously injured. He testified that he was struck three or four seconds after he alighted. He described the incident as follows: ''Well, I stepped into the safety zone and while doing this I was observing the welfare of my family. I was looking after them. . . . I was motioning to them to stay in the clear and not to run out in the street, stay in the safety zone, and as I was turning to the left the back right side of the street car struck me or collided me striking me to the sidewalk.'' The jury returned a verdict for damages in the sum of $2,500. The trial court gave judgment for defendants notwithstanding the verdict. Plaintiff appealed. He died during the pendency of the appeal, and the administratrix of his estate was substituted as plaintiff. In this opinion, however, the decedent will be referred to as plaintiff.

A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied. (Code Civ. Proc., § 629; *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 649 [122 P.2d 576]; *Card* v. *Bome*, 210 Cal. 200 [291 P. 190]; *McKellar* v. *Pendergast*, 68 Cal.App.2d 485, 487 [156 P.2d 950].) There was ample evidence in the present case to support the verdict.

It is contended that plaintiff had a right to feel secure from any collision with a streetcar while he was standing in the safety zone and that he was at least entitled to a warning that the car would protrude into the safety zone. Defendants take the position that since the traffic department of the city of Sacramento established the safety zone it was the city's responsibility if the zone was not so located that its users would be reasonably safe within the zone. They contend that streetcars are not required to keep clear of a safety zone, since section 572 of the Vehicle Code forbids the driving only of ''vehicles,'' a term that does not include streetcars (§ 31), through or within a safety zone. Relying on *Dwyer* v. *Los Angeles Ry. Corp.*, 115 Cal.App. 709, 714 [2 P.2d 468], they contend that the fact that in rounding a curve the rear end of a streetcar will swing beyond the track is so well known to every adult person that the motorman of a streetcar is

under no legal duty to warn such a person of the possible danger of a collision from the swing of the car.

The streetcar tracks in question were laid before the safety zone was established by the city. It does not appear therefore that defendant corporation was responsible for the failure of the safety zone to afford protection to its users against the dangers of streetcar traffic. Nor does the present case turn on the question whether the motorman of a streetcar that is about to turn on a curve is generally under a duty to warn an adult person within the area covered by the swing of the car. The controlling question is whether such a warning is required when the person who might be struck by the rear end of the car stands in a safety zone.

■ The standard of care required from a streetcar company and its employees with regard to the dangers from a turning car is not absolute but depends upon the surrounding circumstances. Their conduct must be viewed as a whole in the light of all circumstances from which negligence might be inferred, especially ''where the several elements from which negligence might be inferred are so closely interwoven as to form a single pattern, and where each imparts character to the others.'' (*Blair* v. *Baltimore & Ohio R. Co.*, 323 U.S. 600, 604 [65 S.Ct. 545, 89 L.Ed. 490].) If their conduct is so judged a precaution necessary under some circumstances may be unnecessary under others. In any event the standard of care to be exercised must be commensurate to the dangers of the business and the hazards at the place of the injury. (*Peri* v. *Los Angeles Junction Ry. Co.*, 22 Cal.2d 111, 123 [137 P.2d 441], and cases there cited; *Tiller* v. *Atlantic Coast Line R. Co.*, 323 U.S. 574, 579 [65 S.Ct. 421, 89 L.Ed. 465]; *Blair* v. *Baltimore & Ohio R. Co.*, supra, at 604.) ■ A decisive consideration in determining whether an act was negligent is whether the surrounding circumstances made it reasonably foreseeable that there was a risk of injury. When this question depends on the foresight of another it becomes pertinent whether the other had reason to perceive danger, and whether alertness to the requirements of the situation could be expected of him. Thus an actor's duties vary according to whether he faces a child or an adult, a blind man or one who can see, one who sleeps or one who is awake. His duties also vary according to whether he may reasonably expect another to be aware of danger or must know that another's sense of security has been relaxed. (See, Rest., Torts, §§ 290, 302;

Prosser, Torts, 243.) ■■ In the present case it should have been apparent to defendants that users of the safety zone would relax their vigilance. A safety zone is ordinarily an assurance to those within its limits that they are reasonably safe from danger. Even though defendants had no part in establishing the safety zone in an unsafe place, it should have been apparent to them that the users of the safety zone would act differently from ordinary users of the street. Regardless of whether one who stood in plaintiff's place had there been no safety zone would be entitled to a warning (see *Dwyer* v. *Los Angeles Ry. Corp.*, 115 Cal.App. 709, 714 [2 P.2d 468]; *Wood* v. *Los Angeles Ry. Co.*, 172 Cal. 15 [155 P.68]; *Zalewski* v. *Milwaukee etc. Co.*, 219 Wis. 541, 545 [263 N.W. 577]; *Trail* v. *Tulsa Street Ry. Co.*, 97 Okla. 19 [222 P. 950]; see, also, Ann.Cas. 1916E 680) plaintiff, who stood in such a zone could reasonably be expected to divert his mind from the dangers of the street traffic, and should therefore have been warned that he was in danger of harm from the overswing of the car. "Conceding that a pedestrian must be presumed to take notice of the obvious fact that the body of a streetcar in rounding a curve must necessarily swing out some little distance from the track on the outside of the curve, plaintiff herein had no reason to believe that the markings of the safety zone would be within the area of the overswing." He had, therefore, the "right to rely upon the appearances." (*Mangan* v. *Des Moines City Ry. Co.*, 200 Iowa 597 [203 N.W. 705, 41 A.L.R. 368]; see, also, *Laurent* v. *United Railways* (Mo.), 191 S.W. 992; *Elder* v. *Rutledge*, 217 Ind. 459, 469, 470 [27 N.E. 2d 358]; *Heva* v. *City of Seattle*, 150 Wash. 61 [272 P. 41]; *Wilson* v. *International Ry. Co.*, 205 App.Div. 275 [199 N.Y.S. 562]; *Wechsler* v. *Pittsburgh Rys. Co.*, 247 Pa. 96, 98 [93 A. 19]; contra: *Ferguson* v. *Kansas City Public Service Co.*, 159 Kan. 520 [156 P.2d 869, 875]; cf. *Hering* v. *City of Detroit*, 244 Mich. 293, 295 [221 N.W. 278] [zone unmarked but provided by city ordinance to exist at every regular stopping place of streetcars].) It makes no difference that in the Mangan case the defendant company had installed the safety zone, for the appearances on which plaintiff could rely were the same in both cases. Nor can it be said that because the Vehicle Code prohibits only the driving of vehicles, not including streetcars, through safety zones, the users of such zones are not justified in assuming that the zone affords protection from the dangers of streetcar traffic as well as

from the dangers of other traffic. It is generally understood that it is the purpose of a safety zone to afford its users protection from all traffic hazards. In harmony with this common conception, section 88 of the Vehicle Code defines a safety zone as an "area or space lawfully set apart within a roadway for the exclusive use of pedestrians." The Vehicle Code directs its prohibition against passing through safety zones to vehicles only because it presupposes that safety zones will be so arranged as to be out of the reach of streetcars operated on stationary tracks.

Since plaintiff's right to a warning follows from his use of a safety zone and is a right enjoyed by any member of the public similarly situated, it is unnecessary to determine whether plaintiff, while standing in the safety zone, was still a passenger within the meaning of section 2100 of the Civil Code. (See *Lagomarsino* v. *Market Ry. Co.*, 69 Cal.App.2d 388, 393 [158 P.2d 982] ; *Choquette* v. *Key System Transit Co.*, 118 Cal.App. 643, 652 [5 P.2d 921].) Since the risk that materialized in this case was a general one and was necessarily connected with the location of the safety zone and the curve of the tracks at that corner, it was not only the duty of the defendant motorman to warn plaintiff when he started the car but also the duty of the defendant corporation to instruct its motorman to give such a warning. The former is therefore liable not only for the negligence of its employees but also for its own negligence.

That plaintiff was not contributively negligent follows from our conclusion that he had no reason to believe that the safety zone would be within the area of the overswing. "Contributory negligence is not imputable to a plaintiff for failing to look out for a danger which he had no reasonable cause to apprehend, or to a plaintiff who was deceived by appearances calculated to deceive an ordinarily prudent person." (*Welsh* v. *Mercy Hospital*, 65 Cal.App.2d 473, 479 [151 P.2d 17]; see 38 Am.Jur. 866.)

The judgment notwithstanding the verdict is reversed and the court is directed to enter judgment in accordance with the verdict of the jury.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.